[No. 13017.   Department One.   August 30, 1916.]

BOYD HAMILTON, *Appellant*, v. DORLON MIHILLS,
*Respondent.*[1]

BILLS AND NOTES—ACTIONS—DEFENSES—FRAUD IN PROCUREMENT.
A note and its renewal given for stock is shown to have been ob-
tained by fraudulent representations where it appears that the maker
relied upon representations that the corporation, capitalized at
$2,000,000, had valuable limestone deposits, which a responsible party
had agreed to develop by a plant costing $350,000, when no such
agreement had been made and the only asset of the company was an
option on the deposits of little or no value.

SAME—ACTIONS—DEFENSES—FAILURE OF CONSIDERATION.   There is
a practical total failure of consideration for a note for $4,900, given
for corporate stock, where nothing was given for the stock originally
issued to the officers, and there were no assets or anything back of
$2,000,000 in capital stock and $1,250,000 in bonds except an option
to purchase lands of little or no value, and the stock was never
worth more than $600 paid thereon; partial failure of consideration
being a defense *pro tanto.*

SAME—BONA FIDE HOLDERS — CONSIDERATION — KNOWLEDGE.   The
president of a company in active management of its affairs is not
a *bona fide* holder of a note which he took from the corporation

[1]Reported in 159 Pac. 887.

knowing that it was given for bonds and stock that he knew to be practically worthless, as he is charged with knowledge of failure of consideration.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered January 26, 1915, upon findings in favor of the defendant, in an action on a promissory note, tried to the court. Affirmed.

*F. R. Monfort,* for appellant.

*A. E. Barnes* and *Hamblen & Gilbert,* for respondent.

ELLIS, J.—Action on a promissory note made by defendant to the Orofino Portland Cement Company, a corporation, and transferred by indorsement to plaintiff. Defendant, by answer, admits the making of the note, denies that plaintiff was a *bona fide* holder, and sets up as affirmative defenses (1) that the note was procured through fraudulent representations made by the general manager of the corporation; (2) that it was given for bonds and stock of the corporation which were issued without authority, in that the stock of the corporation was never subscribed.

Prior to April 20, 1912, one Reid had an option on certain lands containing limestone deposits at Orofino, Idaho, suitable for the manufacture of Portland cement. The option price was $46,000, on which Reid had paid $1,200. About that time the Orofino Portland Cement Company was organized with a capital stock of $2,000,000, consisting of twenty thousand shares of a par value of $100 each. Eight shares of this stock were subscribed by Reid. The remaining shares were turned over to him with the repayment of the $1,200 which he had paid for the option and $2,500 in bonds of the company, for which he turned over to the company the option on the limestone lands, Reid agreeing to turn back into the treasury of the corporation, or to a trustee for the corporation, $1,000,000 in par value of the stock, to be used as a bonus in the sale of the bonds of the corporation or otherwise in financing the improvement of

the property and in the construction and operation of a
cement mill thereon.

On April 20, 1912, one Dunnett, secretary and manager
of the corporation and also a stockholder, seeking to interest
defendant in the enterprise, represented to him that the
bonds of the corporation were a good investment, would pay
dividends, and that the stock of the corporation was fully
paid up and nonassessable. It fairly appears that he also
represented that the company had already raised $850,000
to construct a three unit cement manufacturing plant, that
$150,000 more was required to put the plant in operation,
and that the bonds were being offered for sale for the pur-
pose of raising the latter sum. Relying on these representa-
tions, defendant finally purchased $5,000 worth of the bonds
at par and received as a bonus the same amount of stock.
He paid $100 down and gave his note for $4,900 for the
balance, depositing with the company certain timber com-
pany stock as collateral. This note became due February 1,
1913. At that time it had developed that the $850,000 for
the construction of the plant had not in fact been raised,
and no effort was made to collect the note. Dunnett again
represented that the company had arranged for the ad-
vancement of $350,000 by one Kastle, a Nebraska banker,
to construct a one unit plant, and that Kastle was a per-
sonal friend of Dunnett with whom he had promoted suc-
cessfully other cement plants less promising in their incep-
tion than this one. Relying on this representation, defend-
ant, on September 26, 1913, gave a new note to the Orofino
Company for $4,900, and soon after paid $500 thereon in
consideration of the release of the timber company stock.
This note became due February 1, 1914. Meanwhile in
July, 1913, plaintiff had become president of the Orofino
Company and had taken over its management. He con-
tinued in that position until the trial of this action. At some
time after January 1, 1914, this second note was transferred
by indorsement to plaintiff, together with a number of similar

notes, as collateral security for a loan of $10,000 from the plaintiff to the company. It does not appear just when this transfer was made. Plaintiff's testimony on the subject is conflicting. He first stated that he thought it was in April, 1914, and subsequently that he thought it was prior to February 1, 1914, the date of the maturity of the note.

Soon after his election as president in July, 1913, plaintiff assumed full management of the financial affairs of the company. Though he denies any knowledge of the representations made to defendant by Dunnett, it is at least certain that he knew what the note was given for. Defendant testified that Hamilton personally assured him that he intended to sue Kastle and make him "come through" on his agreement to finance the building of the mill, and that this was before the note was transferred to Hamilton. Defendant participated in a stockholders' meeting on January 7, 1913, and possibly in an earlier meeting. While it is asserted that, at this meeting of January 7, 1913, a report of the financial condition of the company was read, this report is not in evidence, nor anything to show that it mentioned or threw any light on the supposed contract with Kastle. It is undisputed that the plant was never built and that Kastle never advanced the money for that purpose. Defendant testified that he did not learn how the stock of the company had been paid for or the manner in which the company had been launched until shortly before this action, and that he then learned these things through disclosures made in a suit on a note given by another purchaser of stock and bonds. Many of these things were disputed or qualified by plaintiff's witnesses, but a close scrutiny of the record convinces us that the foregoing facts were established by a fair preponderance of the evidence.

The trial was to the court without a jury. The court found that the note was given in payment for bonds and stock of the company upon representations in regard to the financial condition of the company which were not true;

that there was an entire failure of consideration, and that plaintiff was not an innocent holder. The court concluded, as a matter of law, that plaintiff was not entitled to any recovery, and that defendant was entitled to a surrender and cancellation of the note and to a judgment for costs and disbursements. Judgment was entered accordingly. Plaintiff appeals.

The several assignments of error present three questions. (1) Was the giving of the note induced by fraudulent representations? (2) Was there a failure of consideration? (3) Was appellant a *bona fide* holder? We shall consider these in their order.

I.   The essential elements of representations to constitute fraud, whether as a defense or as a cause of action, are undoubtedly the same. They are these: The representations must have been made as to a material matter; they must be false; it must appear that the maker knew them to be false or made them recklessly as facts without knowledge of their truth; they must have been made with the intention that they should be acted upon by the other party; the other party must have acted in reliance upon them, and he must have thereby suffered injury. *Raser v. Moomaw*, 78 Wash. 653, 139 Pac. 622, 51 L. R. A. (N. S.) 707; *Grant v. Huschke*, 74 Wash. 257, 133 Pac. 447; 20 Cyc. 13.

Applying these principles, we are convinced that the giving of both the first note and the renewal was induced by deceitful representations. There can be no question that the stock was not fully paid up as Dunnett represented. There is no evidence that respondent discovered this fact until, as he testified, shortly before the bringing of this action. This was a vitally material matter. Had respondent known, as there is no evidence he did, that the only asset of the company was the limestone land, he did not know that its only title to that land was an option thereon which had never been taken up. Though respondent was advised, prior to giving the renewal note, that the $850,000 first represented as

available to build the three unit plant was not forthcoming, Dunnett then represented that an agreement had been effected with his friend and former associate, Kastle, for the advancement of $350,000 to build the one unit plant. There can be little doubt that he represented this agreement as an accomplished fact, led respondent to believe that he, as secretary and manager of the company, knew it to be a fact, and convinced respondent of Kastle's ability to carry it out. It is manifest that no such contract nor any enforcible agreement with Kastle had ever been made. The building of at least a one unit plant was also a vital and material factor in the enterprise. Without it neither bonds nor stock would have any value. It is no answer to say that Dunnett merely stated his belief as to future intentions. On the evidence, the court would have been justified in making a specific finding that he represented that this agreement had been made by a person thoroughly responsible financially, and so represented as of his own knowledge. The fact that he so believed but did not know is no excuse in law. As we said in *Grant v. Huschke, supra:*

"Representations, as of his own knowledge, of material and inducing facts susceptible of knowledge, made by a vendor in ignorance of the facts, but with the knowledge that the vendee is relying upon the representations as true and under circumstances reasonably excusing the vendee from investigating for himself, are actionable on the part of a vendee so relying to his injury. In such a case, the fraud of the vendor consists in representing as true, with knowledge that it is being relied upon as true, that which he did not know to be true."

II. It is equally clear that there was a practically total failure of consideration. Of all the stock which had been handed out by the original promoter to the various incorporators and officers, not a cent had been paid for any of it, save a few shares paid for at one dollar apiece. For the original issue to Reid of the entire stock, he gave nothing but options on land which, so far as the record shows, have

never been exercised and may have lapsed. Certain it is that they have never passed beyond the stage of mere options. This is all there is or ever was behind the $2,000,000 of stock and the issue of $1,250,000 of bonds of the corporation. Ten of these bonds of $500 face value each and fifty shares of this stock respondent was induced to take at par as the sole consideration for $100 in money and his note for $4,900, upon which he has paid $500. It would tax the optimism of the most sanguine to believe that these bonds and this stock are or ever were worth more than the $600 which he has already paid for them. Partial failure of consideration is *pro tanto* a valid defense. As said by this court in a similar case prosecuted by this same appellant:

"It seems plain to us that whatever difficulty there might be in computing with exactness the proportionate extent of the failure of consideration in this case, such failure, in any event, exceeds any amount which would be due upon the note here sued upon." *Hamilton v. Ramage*, 89 Wash. 649, 155 Pac. 151.

III. Was the appellant a *bona fide* holder? At the time he took these notes as collateral security he was, and for some time prior thereto had been, president of the company and in active management of its affairs. He must have known that the only assets of the company were merely options on the limestone land. It is conceded that he knew the note was given for the bonds and stock. It cannot be doubted that he knew both bonds and stock were practically valueless. Though there is some evidence from which it might reasonably be inferred that he had learned, prior to acquiring this note, that respondent had been led to believe that the company had a certain and enforcible agreement with Kastle to finance the building of a plant, we find it unnecessary to hold that he had full knowledge of Dunnett's representations. In any event, he is charged with knowledge of the failure of consideration. Even assuming, there-

fore, that he purchased this note before its maturity, he took it charged with knowledge of the infirmity of its consideration.

Judgment affirmed.

MORRIS, C. J., MOUNT, and CHADWICK, JJ., concur.