2015 OK 36

**In the Matter of T.T.S., an alleged deprived child under the age of 18 years.**

**State of Oklahoma ex rel., Department of Human Services, Appellee,**

**v.**

**Kelly D. Jones, Appellant.**

**No. 113326.**

Supreme Court of Oklahoma.

June 9, 2015.

Chris D. Jones, Jones Law, P.C., Durant, OK, for Appellant.

Whitney Kerr, Bryan County District Attorney, Durant, OK, for Appellee.

GURICH, J.

### Facts & Procedural History

¶ 1 Kelly D. Jones is the biological mother of T.T.S. On July 26, 2011, the State of Oklahoma filed a petition seeking to adjudicate T.T.S. as a deprived child. The petition alleged T.T.S. lacked "appropriate parental care" and had been "placed in threat of harm" through mother's actions. Specifically, the state maintained mother was a drug user and provided an unfit home environment for the child. In addition, the petition asserted that following a drug binge, mother was discovered by a law enforcement officer asleep with her boyfriend in a parking lot. Nearby, T.T.S. slept, unsupervised, in mother's car. Two windows had been broken on the vehicle and pieces of glass were located in T.T.S.' child safety seat.[1] There were no

---

1. Trial testimony was conflicting on the cause of the broken windows. There was some indication

physical injuries to T.T.S. The goal, according to the State's petition, was reunification of T.T.S. with mother. Throughout the pendency of this case, T.T.S. has resided with foster parents.

¶2 On August 8, 2011, the trial court appointed Jena Newman to serve as mother's counsel. On August 23, 2011, mother stipulated to the state's petition, and the trial court entered an adjudication order finding T.T.S. was a deprived child. On September 9, 2011, the Oklahoma Department of Human Services submitted a proposed Individualized Service Plan, which noted that mother "appear[ed] to be progressing well."[2] Specifically, DHS reported that mother had been actively seeking employment and was participating in counseling services. The ISP acknowledged that "Worker has received progress reports from service providers showing [mother's] progress is good. [Mother] appears to be motivated to have [T.T.S.] back with her."

¶3 According to the ISP, DHS recommended mother satisfy a number of conditions prior to reunification with T.T.S. The requirements set forth by DHS fell under a number of different headings within the ISP. The first section provided as follows:

Condition(s) which need to be corrected:
Parents will need to be drug free. Parent will have a safe, stable and routine environment with the child's basic needs consistently provided. Child will reside in a home free of alcohol and drug abuse without threat of harm. Needs [sic] parents which are able to protect and provide a safe home free from all forms of domestic violence. Parents [sic] needs to maintain medical and pursue ongoing medical and physical related to his needs and development.

The ISP also contained a section termed "Desired Result(s)," which read as follows:

Desired Result(s):
Parent will demonstrate ability to provide a safe, stable and routine environment with all basic needs including but not limited to physical, medical, and developmental needs being met. He will reside in a home that is free from domestic violence, free of

drugs, and any concerns related to substance abuse. Mother will not be in a position for threat of harm to happen to him.

Additionally, the ISP form contained a "To-Do" checklist, which contained conditions for mother to abide by:

• Ms. Jones will provide transportation, make and maintain all necessary appointments for the child's medical needs, including immunizations and any other medical needs that arises [sic].

• Ms. Jones will ensure a safe, stable and routine environment, free from threat of harm or exposure to domestic violence. If necessary, Ms. Jones will attend counseling for domestic violence.

• Ms. Jones will develop a plan and follow through to provide for the child's basic needs including shelter, proper nutrition, clothing for the season and utilities. Mother will be able to manage her finances available [sic] to maintain all basic needs for the child.

• [Ms. Jones] will have an assessment by a substance abuse treatment center. She will follow all recommendations which may include entrance of a treatment center. Ms. Jones will demonstrate the ability to remain substance free which includes alcohol, illegal and non-prescription drug usage. She [sic] be able to demonstrate written and verbalizing [sic] her relapse prevention plan. She will work with her counselor on what triggers her substance abuse and provide it in writing to DHS. She will work with her counselor on the effects of substance abuse to children and what has brought her to this point in her life.

On the same page as the "To-Do" list, DHS listed further guidelines for mother to observe. These included attending visits with T.T.S. in a timely manner; signing releases to allow DHS to share information with third parties providing services to mother in connection with her case; contacting the assigned caseworker monthly; informing DHS of any changes to address, workplace, per-

mother's boyfriend may have broken the windows during an argument.

**2.** (Record at 21–30).

son(s) living in the same household, or progress on the ISP; providing proof of completing tasks under the ISP, such as certificates, reports, etc.; following all recommendations of service providers; and, attending all court hearings and family team meetings.

¶ 4 A subsequent DHS progress report, filed with the trial court on February 9, 2012, disclosed that mother had been arrested and was incarcerated in the Grayson County Jail in Sherman, Texas. The case was set for review on April 10, 2012. A court minute filed after the review hearing suggested DHS intended to pursue termination of parental rights.[3] On August 7, 2012, the State filed its Application for Termination of Parental Rights of Kelly Jones. Paragraph four of the application read as follows:

4. That the parental rights of [mother] and [father] in and to [T.T.S.] should be terminated pursuant to 10A O.S. § 1–4–904(B)(5) for the following reason:

*That the parents have failed to correct the conditions that led to the finding of deprivation even though they have had over three months to do so.* (emphasis added).

The State's application did not specify what particular conditions mother had failed to correct. A hearing on the matter was scheduled for October 23, 2012. The biological father's parental rights were subsequently terminated at the October hearing. An amended application to terminate mother's parental rights was filed by the State on October 31, 2012. Hearing on the second application to terminate mother's parental rights was scheduled for January 22, 2013.

¶ 5 A letter from mother filed on January 7, 2013, expressly requested an order to have her transported to Bryan County for the upcoming trial proceedings. Mother also urged the court to appoint counsel on her behalf. On January 16, 2013, mother submit-

ted another written request seeking transportation to Bryan County for the hearing on the State's application to terminate her parental rights. According to a court minute dated January 22, 2013, Jena Newman was re-appointed to serve as mother's attorney.[4] Once more the matter was continued for a review hearing to be held on February 26, 2013. In response to mother's inquiry about attending the termination hearing, the State prepared an application requesting the issuance of a bench warrant and an accompanying order. The order issuing the bench warrant was then forwarded directly to mother via the Texas Department of Corrections.

¶ 6 Over the next eighteen months, the matter was continued multiple times.[5] At a February 25, 2014 review hearing, the trial court scheduled a jury trial on the State's application to terminate mother's parental rights for May 1, 2014. Mother sent a letter to the court on March 11, 2014, reiterating her request for transportation to Oklahoma for trial proceedings. In response, the State secured a second bench warrant, this time delivering it to the Bryan County Sherriff. A copy of the warrant reflects it was subsequently withdrawn. On March 21, 2014, the District Attorney filed a second amended application to terminate mother's rights. No proof of service appears in the record.

¶ 7 On May 1, 2014, the trial on the application to terminate mother's rights was stricken at the request of the State. It was rescheduled for September 22, 2014. According to a court minute, the State was "to pursue the transport of the mother from Texas for her jury trial."[6] On July 21, 2014, Jena Newman again sought to withdraw from representing mother in the termination case. An order allowing her withdrawal was approved and filed the same day, finding "[c]ourt sustains attorney's motion to with-

---

3. A Post Adjudication Review Board report, filed prior to the April 2012 review hearing, expressed support for DHS' plan to terminate parental rights. The PARB report also reflected the Indian Child Welfare Act was applicable to the action involving T.T.S. It further revealed the Choctaw Nation's involvement and the Tribe's support for termination of parental rights. However, the State's petition and amended petitions deny application of ICWA, 25 U.S.C. § 1901 et seq. Likewise, orders entered throughout these proceedings deny the applicability of ICWA.

4. There is nothing in the record to indicate when or why Ms. Newman had withdrawn prior to the January 22, 2013 court minute.

5. DHS issued several reports between 2013–2014, with each containing the same remarks as set forth in prior versions. There were no adjustments to the corrective conditions set forth in the ISP.

6. Record at 221.

draw, contrary to child's best interests."[7] Following her receipt of the order, mother mailed correspondence to the court, worried about her lack of representation for the upcoming September trial. Mother also reiterated her desire to be physically present for trial proceedings. On August 7, 2014, the trial judge entered an order reappointing Ms. Newman as counsel for mother. Another court minute was entered simultaneously, appointing new counsel for T.T.S.[8]

¶ 8 Mother forwarded another letter to the court on August 19, 2014, expressing concern about being unrepresented and re-urging her request for transportation to the upcoming jury trial.[9] Pre-trial conference was held on August 28, 2014. During this hearing, the trial court issued a court minute which indicated "the state has followed all possible procedure [and] protocol attempting to procure [mother's] attendance at trial."[10] Further the trial court issued the following statement in its court minute:

> It is in the child's best interest that [the] trial proceed *in absentia* if necessary. Counsel has been advised that any communications with [respondent] mother will require [a] "collect call" from [Texas Department of Criminal Justice] which this court is not [authorized] to accept.... It is the [Respondent] mother's responsibility to make herself available and present for trial.[11]

¶ 9 On September 22, 2014, the matter came on for jury trial on the State's application to terminate mother's parental rights. Mother was unable to secure arrangements for her transportation to Bryan County.[12] Counsel for mother objected to proceeding without mother's attendance and requested the trial be continued.[13] The trial judge found "it is in the best interest of the child that the jury trial continue. Ms. Newsman's [sic] motion to continue is overruled, exceptions allowed." (Tr. 5–14; O.R. at 251). After jurors were seated, the trial judge directed his bailiff to call mother's name three times in the courthouse hallway; with no response, the parties proceeded to try the case without her presence. The judge then announced:

> And the record will reflect that the Respondent Mother was properly served and notified and has not appeared today. And I would also note for the jury at this point, that the Respondent Mother is currently incarcerated in the State of Texas. Her incarceration has no specific bearing on or relationship to the juvenile case itself and the jury should not consider the mere fact of her incarceration as evidence against her so far as termination of her parental rights is concerned.[14]

¶ 10 After all testimony was presented and the ISP admitted into evidence, the jury was provided instructions for their deliberations. Instructions 11 and 12 set forth that the State sought to sever mother's parental rights due to her failure to correct the conditions which led to a deprived adjudication. However, neither the instructions nor the verdict forms detailed the particular conditions mother had failed to remedy. The jury entered a verdict finding mother's parental rights to T.T.S. should be terminated on the sole ground she had failed to correct the conditions which led to the deprived adjudication. A final order terminating mother's parental rights was entered on September 29, 2014. Although the journal entry concludes mother failed to correct conditions outlined by DHS, the order does not include the specific conditions which mother failed to remedy.

---

7. Record at 231.

8. With a little more than one month before trial, Michael Haggerty, II, was appointed to represent T.T.S. There is no indication why the child's prior attorney had withdrawn from the case.

9. Although the record demonstrates Ms. Newman had been ordered to represent mother on August 7, 2014, there is no documentation in the record establishing delivery of the order to mother.

10. Record at 244.

11. *Id.*

12. According to mother's attorney, Bryan County demanded advance payment of $1,100.00 in order to provide transportation from Gatesville, Texas. Mother was incarcerated and had no means to pay this cost. Counsel repeatedly objected to proceeding without mother present.

13. Counsel for T.T.S. objected to continuing trial proceedings.

14. Trial Tr. at 5.

¶ 11 Mother was appointed new counsel for purposes of commencing an appeal of the order terminating her parental rights. Her appeal raises six assignments of error, including whether: (1) mother's due process rights were violated by failing to provide proper notice of the jury trial and failing to inform her that failure to appear could result in termination pursuant to 10A O.S.2011 § 1–4–905; (2) mother's due process rights were violated as a result of the State's failure to secure her attendance at the termination trial; (3) mother's constitutional right to effective legal representation throughout proceedings was violated; (4) the trial court erroneously failed to provide clear and sufficient jury instructions specifying the alleged conditions mother failed to correct; (5) the trial court erred by failing to execute a journal entry which listed with specificity all conditions mother failed to correct; and, (6) there was insufficient evidence to support termination of mother's parental rights.

¶ 12 The legal issues presented in propositions four and five have been decided by the Court of Civil Appeals with conflicting results. This appeal was retained to resolve the discord among those opinions. We find that in cases brought pursuant to 10A O.S. 2011 § 1–4–904(B)(5), due process requires the particular conditions a parent allegedly failed to correct, to be specified in (1) the State's application to terminate parental rights; (2) jury instructions; (3) verdict forms; and (4) the final order terminating parental rights. Because these constitutional safeguards were not satisfied, we reverse the Journal Entry Terminating the Parental Rights of Respondent Mother and remand for a new trial.

### Analysis

¶ 13 We are called upon to decide whether, in actions predicated on 10A O.S.2011 § 1–4–904(B)(5), due process requires jury instructions, verdict forms, and the final judgment, to include specific conditions which a parent failed to correct. This legal issue has been resolved inconsistently by separate panels of COCA.[15] Mother contends the trial judge committed reversible error by failing to provide jurors with clear jury instructions and verdict forms, which enumerate the specific conditions mother failed to correct. Additionally, mother alleges the trial judge erred by omitting the particular unresolved conditions in the final journal entry of judgment.

¶ 14 Issues arising out of the procedure used in an action to terminate parental rights call for application of a de novo review. *In the Matter of A.M. and R.W.*, 2000 OK 82, ¶ 6, 13 P.3d 484, 486–487. Under the de novo standard, this Court examines legal issues independently, without deference to findings of the trial court. *Harmon v. Cradduck*, 2012 OK 80, ¶ 10, 286 P.3d 643, 648. Our inquiry into whether an individual has been denied procedural due process is twofold. Initially we must determine whether the aggrieved individual possessed a protected interest to which due process protections apply. *In the Matter of A.M. and R.W.*, ¶ 7, 13 P.3d at 487. If the person does enjoy a safeguarded status, we then must assess whether the party was conferred with the appropriate level of process. *Id.*

---

**15.** Several decisions from COCA have concluded that in actions brought pursuant to 10A O.S.2011 § 1–4–904(B)(5), the uncorrected conditions which led to a deprived adjudication must be set forth with particularity in the jury instructions, verdict forms, and final journal entry of judgment. *See e.g. In the Matter of R.A.*, 2012 OK CIV APP 65, ¶ 20, 280 P.3d 366, 372–373 (finding the trial court erred by failing to include specific conditions parent failed to correct in jury instructions, verdict forms, and final order); *In the Matter of B.C.*, 2010 OK CIV APP 103, 242 P.3d 589, 592 (reversing order terminating parental rights based on failure to set forth specific uncorrected conditions in jury instructions); *see also In re A.F.K.*, 2014 OK CIVP APP 6, ¶ 7, n. 5, 317 P.3d 221, 225 (endorsing the trial court's use of verdict forms which allowed jurors to select those conditions which parent failed to correct in termination action brought pursuant to 10A O.S.Supp.2009 § 1–4–904(B)(5)). Conversely, COCA recently rejected the claim that jury instructions must precisely detail each of the conditions a parent failed to correct. *In the Matter of J.K.T.*, 2013 OK CIV APP 70, ¶¶ 9–16, 308 P.3d 183, 186–188 (finding no requirement to identify particular conditions in jury instructions under § 1–4–904(B)(5); however verdict forms and final order did contain specific conditions not corrected); *see also In the Matter of L.S.*, 2013 OK CIV APP 21, ¶ 11, 298 P.3d 544, 548 (declining to reverse order terminating parental rights which did not specify the conditions parent failed to correct; however, jury instructions did contain a detailed list of the particular conditions).

¶ 15 Parents are vested with a fundamental, constitutionally protected right in raising and rearing their children, as articulated by the United States Supreme Court in *Santosky v. Kramer,* 455 U.S. 745, 753–54, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982):

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

Given the gravity of the rights implicated, vigilant enforcement of the full panoply of procedural safeguards must be carried out in child deprivation cases. *In the Matter of Chad S.,* 1978 OK 94, ¶ 12, 580 P.2d 983, 985. Furthermore, because this matter involves a challenge to jury instructions and matters of procedure, we may reverse the trial court verdict when error constitutes a substantial violation of a constitutional or statutory right. 20 O.S.2011 § 3001.1.

¶ 16 Termination of parental rights cases are controlled by Title 10A O.S.2011 § 1–4–904. Several grounds exist for severing the parent-child bond under this section. In the present case, the State alleged only one basis for terminating mother's parental rights, namely, her failure to correct the conditions which led to the deprived adjudication pursuant to § 1–4–904(B)(5).[16] Following presentation of all testimony, the jury was provided Instruction 11, which read as follows:

### Failure To Correct Conditions

The State seeks to terminate the parent's rights on the basis of failure to correct the conditions that led to the finding that a child is deprived. In order to terminate parental rights on this basis, the State must prove by clear and convincing evidence each of the following elements:

1. The child has been adjudicated to be deprived;

2. The parent has failed to correct the conditions that caused the child to be deprived;

3. The parent has had at least three months to correct the conditions; and,

4. Termination of parental rights is in the best interests of the child.

In addition, the trial court submitted Instruction 12 as follows:

### Failure To Correct Conditions–The Individualized Service Plan

In order for you to find that there has been a failure to correct the conditions which caused a child to be found deprived, you must find that the Court placed the parent on notice of the conditions to be corrected by means of an individualized service plan.

An 'individualized service plan' provides a list of activities or standards of conduct that are designed to assist the parent to correct the conditions that caused a child to be deprived.

In order to terminate parental rights, you must find by clear and convincing evidence that the conditions which caused the child to be deprived have not been corrected. Failure to complete an individualized service plan alone is not a basis to terminate parental rights, but it is evidence that the jury may consider in determining whether the conditions have been corrected.

The record indicates mother's counsel did not object to either of the aforementioned jury instructions.[17] We are, therefore, confined to

---

**16.** The relevant portion of 10A O.S.2011 § 1–4–904 reads:

> B. The court may terminate the rights of a parent to a child based upon the following legal grounds:
> 5. A finding that:

a. the parent has failed to correct the condition which led to the deprived adjudication of the child, and
b. the parent has been given at least three (3) months to correct the condition;

**17.** Although mother's attorney did not object to the instructions, the transcript reveals concern

review this matter to ascertain whether the instructions given rose to the level of fundamental error. 12 O.S.2011 § 578; *see also Sullivan v. Forty–Second West Corp.*, 1998 OK 48, ¶ 6, 961 P.2d 801, 802–803 (noting this Court's inherent power to review the record for fundamental error).

¶ 17 When the trial court fails to provide jury instructions which accurately reflect the applicable law, a fundamental error occurs. *Taliaferro v. Shahsavari*, 2006 OK 96, ¶ 25, 154 P.3d 1240, 1247–48. We have held that a fundamental error is one which "has a substantial effect on the rights of one or more of the parties" and is reviewable even if the parties did not raise the error on appeal. *Sullivan*, 1998 OK 48, ¶¶ 4, 7, 961 P.2d at 802–03. Thus, an inaccurate jury instruction which infringes on a party's due process rights constitutes fundamental error and warrants review by this Court.

¶ 18 The State claims that the challenged instructions given were not erroneous because both mirrored those set forth in the Oklahoma Uniform Jury Instructions. While 12 O.S.2011 § 577.2 mandates the use Oklahoma Uniform Jury Instructions (OUJI) where applicable, instructions must also correctly reflect the pertinent law to aid jury deliberations. *B–Star, Inc. v. Polyone Corp.*, 2005 OK 8, ¶ 23, 114 P.3d 1082, 1087–88. Furthermore, it is the trial judge's duty to deviate from the OUJIs if an instruction fails to accurately state the applicable law, is erroneous, or is improper. *Thomas v. Gilliam*, 1989 OK 59, ¶¶ 7, 9, 774 P.2d 462, 465–466. Thus, when a jury instruction fails to aid the jury by accurately reflecting the applicable law, the trial court should alter, supplement, or replace the erroneous instruction. We recognize that the trial judge was conflicted over the appropriate instructions to utilize in this case. Nevertheless, if the instructions do not comport with due process, we must conclude fundamental error was committed.

¶ 19 Oklahoma's Constitution decrees "[n]o person shall be deprived of life, liberty, or property, without due process of law." Okla. Const. Art. 2, § 7. Due process requires notice sufficient to "reasonably [inform] a person that his legally-protected interest may be adversely affected." *In the Matter of C.G.*, 1981 OK 131, ¶ 9, 637 P.2d 66, 68. In the context of cases seeking to sever the parent-child relationship, we said:

> Any parent whose child is adjudged to occupy a legal status termed 'deprived' must be judicially advised of those parental conduct norms which he is expected to follow or eschew to recapture a legally unencumbered standing as a parent. *The very purpose of these norms is to afford the parent an opportunity to ameliorate his condition and to effectively defend against termination efforts.* Judicial notice cannot depend on inferences to be gathered from reports of social workers or of medical doctors. It can only be found in written judicially-prescribed norms of conduct to which the parent is expected to conform.

*Id.* (emphasis added & footnotes omitted).

¶ 20 The ISP in the present case contained an expansive list of remedial measures DHS desired mother to accomplish. Some of the items were designated as mandatory, while others were characterized as desired. What precisely was expected from mother in this case to re-establish physical custody of T.T.S. was less than clear. Moreover, none of the State's applications to terminate mother's parental rights set forth the precise conditions mother failed to correct. Similarly, neither the jury instructions nor the verdict forms provided specificity with regard to the corrective measures mother had allegedly failed to ameliorate. Without this information mother could not effectively defend against the State's action to dissolve the parent-child relationship. Due process requirements mandate reasonable notice of the conditions leading to a deprived adjudication, including jury instructions and verdict forms which outline a parent's purported noncompliance. Thus, we find Instructions

---

expressed by Judge Powers over the conflicting COCA decisions on "failure to correct" instructions:

> We struck the case from the last jury term, as was noted, and the reasons therefore was because of the conflicting cases on instructions in

terminations, the different branches of the Court of Civil Appeals. We still await a decision from the Supreme Court, hopefully clarifying those circumstances.

Trial Tr. at 13.

11 and 12 violated rudimentary principles of due process and constitute fundamental error. Termination actions predicated on 10A O.S.2011 § 1–4–904(B)(5) command the use of jury instructions and verdict forms which identify, *with particularity,* those conditions which a parent failed to correct.

¶ 21 Likewise, the trial court's final order terminating mother's parental rights failed to set forth the particular conditions mother failed to correct. As noted by COCA in *In the Matter of B.M.O.,* 1992 OK CIV APP 89, ¶ 10, 838 P.2d 38, 40:

> Termination can be sanctioned only on a finding that Appellant failed to correct the very conditions which led to the deprived adjudication. In the absence of a clear statement by the trial court as to what those conditions were, either in the adjudicative order or the termination order, we are effectively precluded from determining if the trial court acted properly in terminating Appellant's parental rights. (citation omitted).

For the same reasons set out herein above, we conclude that in future proceedings initiated under 10A O.S.2011 § 1–4–904(B)(5), a final order terminating parental rights shall identify the precise conditions the parent failed to correct.

### Conclusion

¶ 22 Disruption of the family unit through termination of parental rights requires courts to exercise the utmost diligence in their application of procedural safeguards. When the State initiates proceedings to terminate a parent-child bond pursuant to 10A O.S.2011 § 1–4–904(B)(5), it must provide parents with detailed allegations, specifying those conditions the State claims were not rectified. Due process demands such charges be included in the State's application to terminate parental rights, jury instructions, verdict forms, and final journal entry of judgment. Because we reverse this case for a new trial, we need not directly address the remaining

assignments of error raised in mother's Brief in Chief.[18]

¶ 23 Today's decision shall apply prospectively—controlling only those cases currently pending or filed after the issuance of this opinion. It shall have no effect on cases that have become final judgments.

**TRIAL COURT'S JOURNAL ENTRY TERMINATING THE PARENTAL RIGHTS OF RESPONDENT MOTHER IS REVERSED; MATTER REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

¶ 24 REIF, C.J., WATT, EDMONDSON, COLBERT, GURICH, JJ., concur.

¶ 25 KAUGER, J., concurs in result.

¶ 26 COMBS, V.C.J., concurs in part and dissents in part.

¶ 27 WINCHESTER, TAYLOR, JJ., dissent.

---

18. On remand, the trial court should be mindful of our prior decisions in *Hemphill v. Harbuck,* 2014 OK 24, ¶¶ 8–9, 326 P.3d 521, 523–524 and *Harmon v. Harmon,* 1997 OK 91, ¶¶ 13, 16, 943 P.2d 599, 604–605. Should mother remain incarcerated and wish to participate in trial proceedings, alternate arrangements should be made to accommodate her appearance (i.e., tele-

phonically, videoconferencing, etc.). The trial court may request permission from the Chief Justice for funds to cover the cost of a telephonic appearance. Additionally, notice of any future trial dates and times should be *served* on mother according to 10A O.S.2011 §§ 1–4–905(A) and 1–4–304.