IN THE MATTER OF J.S.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF J.S.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF J.S.
2018 OK CIV APP 61
Case Number: 116622
Decided: 09/14/2018
Mandate Issued: 10/10/2018
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2018 OK CIV APP 61, __ P.3d __

 

IN THE MATTER OF: J.S., child under 18 years of age.

STEPHEN SHAW and ROBYN DICKENS, Appellants,
v.
STATE OF OKLAHOMA, Appellee.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE DORIS L. FRANSEIN, TRIAL JUDGE

AFFIRMED

Timothy J. Gifford, LAW OFFICE OF TIMOTHY J. GIFFORD, Tulsa, Oklahoma, for Appellants

Stephen A. Kunzweiler, TULSA COUNTY DISTRICT ATTORNEY, Gregory A. Eberhard, ASSISTANT DISTRICT ATTORNEY, Tulsa, Oklahoma, for Appellee

Timothy R. Michaels-Johnson, TULSA LAWYERS FOR CHILDREN, Tulsa, Oklahoma, for Child

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Appellants Stephen Shaw and Robyn Dickens (collectively, Parents) appeal from the trial court's order terminating their parental rights to their minor child on the sole ground that the trial court committed fundamental error in terminating their rights pursuant to 10A O.S. Supp. 2014 § 1-4-904(B)(17) instead of 10A O.S. Supp. 2013 § 1-4-904(B)(15). We affirm.

BACKGROUND

¶2 The facts pertinent to this appeal are not in dispute. On June 11, 2014, the minor child was placed in emergency custody with the Department of Human Services (DHS). On June 20, 2014, Appellee State of Oklahoma filed a petition seeking leave to have the minor child adjudicated deprived as defined by 10A O.S. 2011 § 1-1-105(20)(a), (b), (d) and (e).[1] Parents stipulated to the petition and an adjudication order was filed on July 23, 2014, for the statutory basis of "neglect -- nutritional and environmental" and "mental health and/or intellectual disability may have contributed to the neglect." The court ordered Individualized Service Plans for Parents on September 10, 2014. On December 16, 2015, State filed motions to terminate Parents' rights and the same grounds for termination were alleged as to each parent, as follows: (1) failure to correct conditions for the requisite statutory period, 10A O.S. Supp. 2013 & Supp. 2015 § 1-4-904(B)(5); (2) willful failure to contribute to the support of the minor child for the requisite statutory period, 10A O.S. Supp. 2011 & Supp. 2015 § 1-4-904(B)(7); and (3) minor "child has been placed in foster care by [DHS] for fifteen of the most recent twenty-two months preceding the filing of this motion/petition," 10A O.S. Supp. 2013 § 1-4-904(B)(15). State filed a second motion to terminate parental rights on September 7, 2016, again alleging against both parents grounds pursuant to 10A O.S. § 1-4-904(B)(5) and (7), and alleging that the minor child "was younger than four years of age at the time of placement in foster care by [DHS], has been in foster care for six of the most recent twelve months, and cannot safely be returned to the home of [Parents]" pursuant to 10A O.S. Supp. 2015 § 1-4-904(B)(17).[2]

¶3 Parents waived their rights to a jury trial and a non-jury trial was held on September 7 and 8, 2017. On September 27, 2017, the trial court entered its "Decision." Among the findings made by the trial court in its nine-page decision were the following

Pursuant to statutory calculation, at the time the Motions to Terminate the Parental Rights of [Parents] were filed, [minor child] had been in foster care for almost twenty-six (26) months (i.e., adjudication date, July 23, 2014, to September [7], 2016). At the time of the trial, [minor child] had been in foster care, as defined by law, for approximately thirty-seven (37) months (i.e., July 23, 2014, to September 7, 2017).[3]

The court's legal conclusions set forth the requirements of 10A O.S. Supp. 2015 § 1-4-904(B)(17)[4] and concluded

There are no issues regarding the adjudicatory status of the [minor child] or the length of time [minor child] has been in foster care prior to the filing of the Motion. [State] or the Court did not contribute to the period of time that [minor child] remained in foster care. And despite the continuances given to [Parents] at their request to employ the assistance of private counsel, they still failed to provide any indicia of evidence that obtaining custody of their child would be safe for [minor child].[5]

The trial court entered its order sustaining State's motion to terminate Parents' parental rights upon the statutory ground set forth in 10A O.S. § 1-4-904(B)(17) and ordering that such termination is in minor child's best interests. Parents appeal.[6]

STANDARD OF REVIEW

¶4 The only issue Parents raise on appeal is whether the trial court "committed fundamental error by applying 10A O.S. [Supp.] 2014 § 1-4-904(B)(17) retroactively to terminate [their] parental rights to the minor child."[7] "[A] fundamental error is one which 'has a substantial effect on the rights of one or more of the parties'" and is reviewable even if the error has been raised for the first time on appeal. In re T.T.S., 2015 OK 36, ¶ 17, 373 P.3d 1022. "[I]t is within the purview of this Court to review the record for fundamental error." Sullivan v. Forty-Second West Corp., 1998 OK 48, ¶ 6, 961 P.2d 801 (citation omitted). Questions of law, such as those raising fundamental error, are reviewed by a de novo standard without deference to the trial court's legal rulings. In re L.M., 2012 OK CIV APP 41, ¶ 41, 276 P.3d 1088 (citation omitted).

ANALYSIS

¶5 Parents argue the 2014 "amendment to 10A O.S. § 1-4-904(B) created a whole new ground for terminating parental rights under [subpart] (B)(17)" which shortens the time during which a child must be in foster care before parental rights may be terminated. Thus, they argue, State's burden has been lessened from what it was required to prove under 10A O.S. Supp. 2013 § 1-4-904(B)(15), which was that the child was placed in foster care for fifteen of the most recent twenty-two months preceding the motion to terminate. Consequently, Parents argue, the 2014 amendment is not remedial or procedural; rather, it is substantive and, therefore, may only be applied prospectively absent a clear legislative intent otherwise. They argue the trial court committed reversible error when it terminated their rights under a statute -- § 1-4-904(B)(17) -- that was not in effect on June 20, 2014, the date State filed its petition for adjudication.

¶6 Though not specifically cited by Parents, the mandate of Article 5, section 54 of the Oklahoma Constitution appears to be at the heart of their argument that "State created this cause of action on June 20, 2014"; therefore, the statutory ground that should have been applied by the trial court for termination of parental rights was 10A O.S. Supp. 2013 § 1-4-904(B)(15), the statute in effect when the petition for adjudication was filed but which was repealed prior to State's December 2015 and September 2016 motions to terminate parental rights.

¶7 Article 5, section 54 provides, in part, as follows:

§ 54. Repeal of statute - Effect
The repeal of a statute shall not . . . affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute.

In the present case, 10A O.S. Supp. 2013 § 1-4-904(B)(15) was in effect at the time of adjudication but was not reenacted in the amendments to § 1-4-904(B) that became effective November 1, 2014; instead, § 1-4-904(B)(16) and (17) were added. In December 2015, more than a year after the 2014 version of § 1-4-904(B)(17) became effective and more than a month after the 2015 version of that statute became effective, State moved for termination based on the statutory ground set forth in the 2013 version of § 1-4-904(B)(15). In September 2016, however, State filed its motion to terminate parental rights on, among other grounds, the 2015 version of § 1-4-904(B)(17). Parents appear to argue that because the present proceedings were begun under the 2013 version of § 1-4-904(B)(15), the repeal of § 1-4-904(B)(15) "shall not . . . affect . . . proceedings begun by virtue of [§ 1-4-904(B)(15)]"; thus, termination of their parental rights cannot be predicated on § 1-4-904(B)(17), either the 2014 or 2015 version of that statute.

¶8 State argues, however, that § 1-4-904(B)(17) did not "have any substantial and negative effect on [Parents'] rights, [and] in effect bestowed on [Parents] additional protections not afforded to them under the previous version of the statute." It further argues § 1-4-904(B)(17) was prospectively applied because the September 2016 motions to terminate were filed over six months after the effective date of the amended statute.

¶9 We agree with the decision reached by other divisions of this Court that Article 5, section 54 of the Oklahoma Constitution controls the issue before us of whether the trial court committed fundamental error. See e.g., In re L.M., 2012 OK CIV APP 41, ¶ 51, 276 P.3d 1088; In re P.W.W., 2012 OK CIV APP 18, ¶ 11, 273 P.3d 83. The application of that constitutional safeguard to the facts of this case requires us to first determine whether the statutory ground for termination of parental rights created by § 1-4-904(B)(17) applies prospectively or retroactively. If it applies prospectively, we must then determine whether, in this case, proceedings begun for purposes of Article 5, section 54 was the date State filed its petition for adjudication or the date State filed its motions for termination of parental rights.

A. Prospective or Retroactive Application

¶10 We discern no legislative intent, express or necessarily implied, for retroactive application of § 1-4-904(B)(17).[8] "Under the general rule, operation of the amended statute would be prospective only, unless one of its exceptions applies"; that is, remedial or procedural statutes which do not create, enlarge, diminish, or destroy vested rights are generally held to operate retroactively. In re L.M., 2012 OK CIV APP 41, ¶ 43, 276 P.3d 1088 (citations omitted). There the Court addressed a first impression issue of whether in parental termination cases "substantive rights are affected by an amended ground's changes to the prior version's elements." Id. ¶ 48. Finding instructive the reasoning applied by the Oklahoma Supreme Court in two workers compensation decisions,[9] the In re L.M. Court determined that the statutory ground with which it was concerned -- § 1-4-904(B)(13) -- added new elements to the former version of the statute and its application placed a lesser burden on the State and a higher burden on the parent in opposing termination thereby affecting the parent's substantive rights. "A substantive change which 'alters the rights or obligations of a party cannot be viewed as solely a remedial or procedural change and cannot be retrospectively applied.' Sudbury v. Deterding, 2001 OK 10, ¶ 19, 19 P.3d 856, 860. Therefore, as applied to this case, § 1-4-904(B)(13)'s operation is prospective only." In re L.M., ¶ 50.

¶11 We are persuaded by the reasoning applied in In re L.M. and to the Court's conclusion that a determination of whether the amended statute comes within an exception to the general rule of prospective application, "requires a comparison of both versions to identify any changes to existing law, and if so, whether the changes are purely remedial or procedural, in which case the amended statute would operate retroactively." Id. ¶ 43 (citations omitted). "If the changes are substantive, its operation is prospective only." Id. (citation omitted).

¶12 As Parents assert, unlike former § 1-4-904(B)(15), pursuant to subpart (B)(17), State need only prove that the minor child was placed in foster care for six months of the twelve months preceding the filing of the motion or petition for termination, thus lessening State's burden of proof and diminishing the time during which a parent might secure the child's release from foster care placement. Although, as State contends, its burden is increased by subpart (B)(17)'s requirement that State must prove "the child cannot be safely returned to the home of the parent," that burden places upon a parent an additional defense and need to counter evidence produced by the State regarding the child's safety.[10]

¶13 We conclude this reduction of time for a parent to regain custody of a child placed in foster care and added defense are substantive changes that require prospective application of the statute.

B. Proceedings Begun

¶14 Although we conclude § 1-4-904(B)(17) applies prospectively, the question remains whether the trial court's reliance on that statutory ground for termination of Parents' parental rights was fundamental error. Relying on In re L.M., Parents argue the prior version of the time-in-foster-care statute should have been the ground for termination because it was the statute in effect at the time the petition for adjudication was filed. As noted by State, other divisions of this Court have addressed the issue of whether the filing of a motion to terminate parental rights is the act which constitutes "proceedings begun" or whether the filing of the petition for adjudication is the act that constitutes "proceedings begun" in termination of parental rights cases.

¶15 "'Proceedings begun' under the meaning of [Article 5, section 54] 'refers to essential steps or measures to invoke, or establish or vindicate a right.'" In re L.M., 2012 OK CIV APP 41, ¶ 51 (citing Cole v. Silverado Foods, Inc., 2003 OK 81, ¶ 8, 78 P.3d 542). As noted by the In re L.M. Court, five published COCA cases had previously addressed "with varying results" the effect of "[s]tatutory amendments to other termination grounds, prior to and after the State had moved to terminate parental rights[.]"[11] Id. ¶ 37. The Court acknowledged the facts before it differed from those other cases, as did the particular statutory ground alleged for termination of parental rights. However, the Court stated, and we agree, "[w]hether [the trial court's reliance on a particular version of a statute] constitutes fundamental error is dependent on the same issue addressed in all five cases -- which version governed State's termination proceeding." Id. ¶ 41 (emphasis added). From our reading of those cases and their rationales and given the requisite elements for the time-in-foster-care ground for termination of parental rights, we conclude the critical date in this case was the filing of the termination motions.

¶16 Although the Court in In re L.M. ultimately determined the essential first step "under the facts of [the] case"[12] before it was the filing of the adjudication petition, the facts in that case are different from those presented here in one significant particular. In In re L.M. the petition for adjudication[13] and the adjudication order[14] brought into the deprived proceedings

§ 7006-1.1(A)(13)'s statutory protection for a special class of parents with mental illness or mental deficiency . . . . This "protected condition" triggered [the child's] removal from [the mother's] custody and his adjudication as a deprived child. [The mother's] mental illness remained the sole basis for the pending deprived action and was relied upon in State's application to terminate her parental rights. Because this statutory protection existed when the deprived action proceedings were begun, § 7006-1.1(A)(13)'s application is protected from extinguishment by the Legislature's 2009 amendments under Art. 5, § 54 of the Oklahoma Constitution. Accordingly, we find no fundamental error with the trial court's instruction based on § 7006-1.1(A)(13).[15]

¶17 In the present case, the petition for adjudication did not bring time in foster care into the deprived proceedings. Minor child was adjudged deprived on the statutory basis of "neglect -- nutritional and environmental" and "mental health and/or intellectual disability may have contributed to the neglect." Indeed, time in foster care as a ground for termination under either the former or current version of the statute does not even arise until the requisite time in foster care has occurred after the child has been placed in foster care or adjudicated deprived and a petition or motion for termination is filed. The facts in this case, therefore, present circumstances more like those presented in In re P.W.W., 2012 OK CIV APP 18, 273 P.3d 83, and other cases in which the critical date was held to be the filing of the petition or motion for termination.

¶18 In In re P.W.W., as in the present case, the State filed its deprived child petition before repeal of the then-2009 version of § 7006-1.1(A)(15) and its motion to terminate parental rights after its repeal. Because the state had not filed its motion to terminate parental rights on the time-in-foster-care ground for termination before repeal, the Court held fundamental error occurred because the trial court instructed the jury on that ground. Even though the mother had not objected to the trial court's instruction on the time-in-foster-care ground for termination, the Court held the mother "could not, by waiver, impart such authority upon the trial court after the Legislature had withdrawn it." Id. ¶ 13. Consequently, the critical date was the filing of the motion to terminate and not the filing of the petition for adjudication.

¶19 As previously noted herein, in In re M.C., the Court determined the Legislature expressly provided for the retroactive application of 10 O.S. § 7006-1.1(A)(15). 1999 OK CIV APP 128, ¶ 3, 993 P.2d 137. In that case, both the petition for adjudication and the first motion to terminate parental rights were filed prior to the effective date of the statute. The father stipulated to the petition that he failed to protect the children from the mother's neglect, and the motion to terminate alleged as the sole ground for termination that the father failed to comply with the standards set by the court to correct the deprived conditions. Id. ¶ 1. Neither, of course, contained any reference to the fifteen-month foster care placement as a statutory ground for termination of the father's parental rights. However, after the enactment of the statute, the State filed an amended motion to terminate in which § 7006-1.1(A)(15) and the failure to correct grounds were alleged. This motion was filed two weeks before the jury trial. Over the father's objection, the jury was instructed on § 7006-1.1(A)(15), the only ground for termination found by the jury.

¶20 While the Court acknowledged that § 7006-1.1(A)(15) retroactively applied as a ground for termination against father, the Court further concluded that as applied in the case before it, the termination of his parental rights resulted from the unconstitutional ex post facto effect of the 1998 amendment. The Court stated:

The 1998 amendment has a "punitive consequence" that did not exist either at the time the State initiated the deprived proceedings, or when it began its quest to terminate father's parental rights. The 1998 amendment also "change[ed] the obligation [of father] and impose[ed] . . . a liability which did not theretofore exist." It clearly has the type of ex post facto effect forbidden by the Oklahoma Constitution as applied to this case and any other case of a parent faced with termination for failure to correct deprived conditions whose exercise of their right to trial causes foster care to extend for the period specified in 10 O.S. Supp. 1998 § 7006-1.1(A)(15).

In re M.C., ¶ 8.

¶21 Although the In re M.C. Court did not specifically address the issue presented herein, the Court's holding rests, in part, on the date the State "began its quest to terminate father's parental rights." Likewise, as stated by the In re P.W.W. Court, application of the amended version of § 7006-1.1(A)(15) has been approved by the Court "in cases where it went into effect after the deprived child proceeding was filed but before the petition [or motion] to terminate was filed. In re A.G., 2000 OK CIV APP 12, 996 P.2d 494, and In re T.M., 2000 OK CIV APP 65, 6 P.3d 1087." 2012 OK CIV APP 18, ¶ 14.

¶22 In the present case, in December 2016, State first began its quest to terminate Parents' parental rights, but the statute upon which it relied for termination had been repealed and was no longer a statutory basis for termination.[16] Time in foster care, however, was still such a ground under the amended version of the statute, § 1-4-904(B)(17). In State's second motion to terminate, the amended version of the time-in-foster-care statute was a stated ground for termination.[17] Because § 1-4-904(B)(17) was the law in effect at the time State began its quest to terminate Parents' parental rights, we conclude the trial court did not commit fundamental error in relying on that statutory ground for its order terminating their parental rights.[18]

CONCLUSION

¶23 We conclude 10A O.S. Supp. 2015 § 1-4-904(B)(17), one of the statutes amending 10A O.S. Supp. 2013 § 1-4-904(B)(15), operates prospectively because its changes are substantive. We further conclude the trial court properly considered 10A O.S. Supp. 2015 § 1-4-904(B)(17) as a ground for termination of Parents' rights because it was the statute in effect at the time State began its quest to terminate their parental rights. Accordingly, we affirm.

¶24 AFFIRMED.

RAPP, J., and GOODMAN, J., concur.

FOOTNOTES

[1] The petition set out the following reasons for adjudication from § 1-1-105(20):

"Deprived child" means a child:

a. who is for any reason destitute, homeless, or abandoned,

b. who does not have the proper parental care or guardianship,

. . .

d. whose home is an unfit place for the child by reason of depravity on the part of the parent or legal guardian of the child, or other person responsible for the health or welfare of the child,

e. who is a child in need of special care and treatment because of the child's physical or mental condition, and the child's parents, legal guardian, or other custodian is unable or willfully fails to provide such special care and treatment. . . .

[2] State's motion did not contain the dates of the statutory provisions pursuant to which it sought termination of Parents' parental rights. As discussed later in this Opinion, Parents raise the issue of whether the 2014 or 2015 version of § 1-4-904(B)(17) is the statute pursuant to which their parental rights were terminated. In our review of the record, we conclude it is the 2015 version of § 1-4-904(B)(17) upon which State and the trial court acted.

[3] R. at 421.

[4] Section 1-4-904(B)(17) provides as follows:

A finding that a child younger than four (4) years of age at the time of placement has been placed in foster care by [DHS] for at least six (6) of the twelve (12) months preceding the filing of the petition or motion for termination of parental rights and the child cannot be safely returned to the home of the parent.

a. For purposes of this paragraph, a child shall be considered to have entered foster care on the earlier of:

(1) the adjudication date, or

(2) the date that is sixty (60) days after the date on which the child is removed from the home.

b. For purposes of this paragraph, the court may consider:

(1) circumstances of the failure of the parent to develop and maintain a parental bond with the child in a meaningful, supportive manner, and

(2) whether allowing the parent to have custody would likely cause the child actual serious psychological harm or harm in the near future as a result of the removal of the child from the substitute caregiver due to the existence of a strong, positive bond between the child and caregiver.

[5] Although the record contains the pleadings, trial transcript, and other documents and instruments concerning the evidence upon which the trial court based its decision, Parents do not assert any arguments concerning the sufficiency of the evidence pertinent to the length of time minor child had been in DHS custody, to the State or the court being responsible for the length of time minor child had been in DHS custody, to the inability of minor child to be safely returned to Parents' home, and to termination of parental rights as being in minor child's best interests.

[6] On appeal, minor child's motion to accept and incorporate State's Answer Brief and to waive additional briefing was granted by the Oklahoma Supreme Court.

[7] As previously noted herein, see n.2, supra, Parents allege it is the 2014 version of § 1-4-904(B)(17) upon which their parental rights were terminated; State argues its motion for termination was based on the 2015 version of the statute. The 2014 version of the statute states, in part,

A finding that a child younger than four (4) years of age at the time of the filing of the petition or motion has been placed in foster care by [DHS]for at least six (6) of the twelve (12) months preceding the filing of the petition or motion for termination of parental rights and the child cannot be safely returned to the home of the parent.

The 2015 version states, in part, as above noted:

A finding that a child younger than four (4) years of age at the time of placement has been placed in foster care by [DHS] for at least six (6) of the twelve (12) months preceding the filing of the petition or motion for termination of parental rights . . . .

(Emphasis added.) The 2015 version of the statute was in effect at the time the December 2015 and the September 2016 motions to terminate were filed and the trial court's decision appears to reference the 2015 version of the statute. In any event, we agree with State's observation that the change in the 2015 version from the 2014 version is inconsequential to Parents' argument on appeal.

[8] This conclusion stands in contrast to the conclusion reached by another division of this Court in In re M.C., 1999 OK CIV APP 128, 993 P.2d 137, concerning 10 O.S. Supp. 1998 § 7006-1.1(A)(15). The In re M.C. Court explained that

10 O.S. Supp. 1998 § 7006-1.1(A)(15) . . . allows termination where "[a] child has been placed in foster care by the Department of Human Services for fifteen (15) of the most recent twenty-two (22) months." The legislature also expressly provided for the retroactive application of this amendment to pending cases involving "adjudicated deprived children who have been in the Department's custody for fifteen (15) of the most recent twenty-two (22) months, and who were in out-of-home placement . . . as of November 17, 1997." 10 O.S. Supp. 1998 § 7006-1.6(A).

In re M.C., ¶ 3. Section 7006-1.1(A)(15) was not reenacted in 2009 when the Legislature amended 10 O.S. § 7006-1.1, 2009 Okla. Sess. Laws, ch. 233, § 76, and renumbered that section 10A § 1-4-904, 2009 Okla. Sess. Laws, ch. 233, § 263. It was subsequently added to 10A § 1-4-904 in 2013. 10A O.S. Supp. 2013 § 1-4-904(B)(15). Section 7006-1.6(A) was repealed effective May 21, 2009. 2009 Okla. Sess. Laws, ch. 233, § 189.

[9] The Court reasoned:

In American Airlines Inc. v. Crabb, 2009 OK 68, ¶¶ 14-16, 221 P.3d 1289, 1292-93, the Court found the addition of the phrase "major cause of the injury" in the amended statutory definition of "compensable injury" added a new element to the claim, intruded on substantive rights, and could not be applied retroactively. After-enacted legislation that "alters the elements of a claim or defense by imposition of new conditions affects the parties' substantive rights and liabilities." King Manufacturing v. Meadows, 2005 OK 78, ¶ 19, 127 P.3d 584, 590; Welch [v. Armer, 1989 OK 117, ¶¶ 27-28, 776 P.2d 847].

The Court in Cole v. Silverado Food Inc., 2003 OK 81, ¶ 13, 78 P.3d 542, 548, similarly held the retroactive application of an amended statute of limitations affected the substantive rights of both parties in two ways. First, it made the employer's defense "much more extensive than it stood at the time the claim was brought." Second it affected the merits or "grounds or elements" of the employee's claim, since she would have to confront a "different defense." Id. ¶ 14, n.27. Because the amended statute operated on "rights in existence," the Court in Cole held its terms are subject solely to prospective application." Id. Similar conclusions were reached about an amended adoption without consent statute in Adoption of W.C., 938 N.E.2d 1052 (Ohio Ct. App. 12th 2010) and Van Bremen v. Geer, 931 N.E.2d 650 (Ohio Ct. App. 5th 2010).

In re L.M., ¶¶ 48-49 (footnote omitted).

[10] Indeed, one of the findings made by the trial court in its Decision was that "despite the continuances given to [Parents] at their request to employ the assistance of private counsel, they still failed to provide any indicia of evidence that obtaining custody of [minor child] would be safe for [minor child]."

[11] Another published opinion subsequently addressed this issue in In re T.J., 2012 OK CIV APP 86, 286 P.3d 659.

[12] Id. ¶ 53.

[13] The petition alleging the child was deprived stated, among other things, "[t]hat the mother's paranoid erratic behaviors is also placing the child is (sic) at risk of harm." Id. ¶ 6.

[14] The order of adjudication found the child was deprived because, among other reasons, "the mother's paranoid erratic behaviors had also placed him at risk of harm." Id. ¶ 8.

[15] Id. ¶ 55. We note two divisions of this Court have reached different conclusions about whether the statutory version of "failure to correct" in effect when the deprived proceedings have begun -- that is, when the petition for adjudication had been filed -- or the version in effect when the petition or motion for termination had been filed governs the proceedings to terminate parental rights. In In re J.C., 2010 OK CIV APP 138, ¶ 2 n.2, 244 P.3d 793, the Court rejected the parent's contention that the law in effect at the time of the deprived adjudication applied to the termination proceeding when the State filed its second amended motion to terminate after the effective date of the statutory amendment. However, in In re T.J., 2012 OK CIV APP 86, 286 P.3d 659, the Court found fundamental error had not occurred when the trial court instructed the jury under the former failure to correct statute -- § 7006-1.1(A)(5) -- that was in effect at the time the petition for adjudication was filed although the state "moved to terminate parental rights after the effective date of Title 10A (May 21, 2009) based on the amended 'failure to correct' ground, § 1-4-904(B)(5)[.]" Id. ¶ 45. The Court reasoned that analogous to the circumstance in In re L.M., the conditions that warranted adjudication in In re T.J. triggered the child's removal from the mother's custody and his adjudication as a deprived child. As in In re L.M., the Court concluded, the mother's efforts in addressing the correction of those conditions (and others) in In re T.J. were the basis for the pending deprived action and were among the conditions upon which the State relied in its application to terminate her parental rights. These facts present a circumstance different from those in the present case.

[16] It is also noted that at the time State filed the December 2016 motions, less than seventeen months, not twenty-two months, had elapsed from the July 2014 adjudication date; consequently, the former version of § 1-4-904(B)(15) had not yet been triggered.

[17] That motion was filed about a year before trial. Notice and opportunity to defend are not issues in this case and no objection was raised by Parents below to the stated ground for termination.

[18] Even if we were to conclude that the critical date was the date of the petition for adjudication such that the former version of the statute applies, the outcome in this case is the same given the unchallenged factual determinations made by the trial court. See n.3 and accompanying text, supra.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2010 OK CIV APP 138, 244 P.3d 793, IN THE MATTER OF J.C.
Discussed
 2012 OK CIV APP 18, 273 P.3d 83, IN THE MATTER OF P.W.W.
Discussed at Length
 2012 OK CIV APP 41, 276 P.3d 1088, IN THE MATTER OF L.M.
Discussed at Length
 2012 OK CIV APP 86, 286 P.3d 659, IN THE MATTER OF T.J.
Discussed at Length
 1999 OK CIV APP 128, 993 P.2d 137, 70 OBJ 3808, In Re: M.C.
Discussed at Length
 2000 OK CIV APP 12, 996 P.2d 494, 71 OBJ 1039, IN THE MATTER OF A.G.
Discussed
 2000 OK CIV APP 65, 6 P.3d 1087, 71 OBJ 1645, IN RE T.M., A.M., and A.M.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 117, 776 P.2d 847, 60 OBJ 1618, Welch v. Armer
Discussed
 2001 OK 10, 19 P.3d 856, 72 OBJ 365, SUDBURY v. DETERDING
Discussed
 2003 OK 81, 78 P.3d 542, COLE v. SILVERADO FOODS, INC.
Discussed at Length
 2005 OK 78, 127 P.3d 584, KING MANUFACTURING v. MEADOWS
Discussed
 2009 OK 68, 221 P.3d 1289, AMERICAN AIRLINES INC. v. CRABB
Discussed
 2015 OK 36, 373 P.3d 1022, IN THE MATTER OF T.T.S.
Discussed
 1998 OK 48, 961 P.2d 801, 69 OBJ 2135, SULLIVAN v. FORTY SECOND WEST CORP.
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA