## SMITH et al. v. SMITH et al.

No. 8871—Opinion Filed Feb. 24, 1919.

Second Petition for Rehearing Denied

Feb. 1, 1921.

(184 Pac. 82.)

(Syllabus by the Court.)

**1. Appeal and Error—Jury—Waiver of Jury Trial.**

A jury may be waived without a written stipulation, where the parties to an action make no request for a jury at any stage of the trial or prior to the commencement thereof, and submit their testimony to the court without a jury. No question of a jury trial having been raised upon the trial of the cause, it is too late for the first time to object in this court that such consent had not been made, and where no request for a jury appears of record, the jury will be considered waived.

**2. Trial—Right to Special Findings and Conclusions—Waiver.**

Under the provisions of section 5017, Rev. Laws 1910, either party may require a special finding of facts and separate conclusions of law by making timely request therefor. Where no request is made until after the court has announced general findings and conclusions, the right will be deemed to have been waived.

**3. Attorney and Client—Fees—Lien on Land—Contract With Indian Minor.**

Where an unrestricted Creek freedman, while a minor over 18 years of age, through his guardian, made a contract with an attorney to bring suit to recover his allotment, then held adversely by his former attorney under a pretended deed previously made to him by said minor, and by virtue of said contract of employment his said attorney brought suit in behalf of said minor in the district court, and rendered valuable services and procured a judgment in favor of said minor canceling the pretended deed given to his former attorney, from which his former attorney appealed to the Supreme Court of this state, and while said appeal was pending and after said minor had attained his majority, he made a new contract with his attorney, agreeing to pay him a fee of an amount of not less than one-third and not more than one-half of the recovery, to be fixed by the district court, in consideration

of services already rendered and to be thereafter rendered by his said attorney, and granting to his said attorney a lien upon the land recovered to secure such fee, and of which contract his former attorney was charged with notice, and he thereafter procured a deed from said minor for a recited consideration of $400, and thereafter dismissed his appeal, in a suit by said attorney to recover his fee and to have the amount recovered to be declared a lien upon the land, held, the trial court committed no error in rendering judgment in favor of the attorney for $1,200, and declaring the same to be a first lien upon the land in controversy.

### 4. Mortgages—"Holder in Due Course"—Notes Held as Collateral for Debt of Payee.

One who has deposited with him by the payee certain promissory notes negotiable in form, and before the maturity thereof, as collateral security for a debt or debts owed by the payee in said notes to the holder thereof, which notes are secured by mortgage on land, is a "holder in due course," and on default in the payment of his debt owed by the payee in said notes, is entitled to sue upon the same, and for a foreclosure of the mortgage given to secure the notes, in the absence of notice of any infirmity that may exist in said notes and mortgage; and this is true where the legal title to the land covered by the mortgage is in another, provided such other purchased the land with notice, actual or constructive, of the existence of such mortgage.

### 5. Same—Suit for Foreclosure—Defense by Purchaser of Land—Fraud.

Where notes are regular upon their face and negotiable in form, and mortgages given to secure the same upon land are duly recorded as required by law, and the same are by the payee and mortgagee, and before maturity of the notes, assigned to his creditor as collateral security for his indebtedness to such creditor, and thereafter a third party purchases the land covered by the mortgages, held that, in a suit by the holder upon the notes and to foreclose the mortgages upon the land, such purchaser will not be permitted to urge as a defense the question of fraud in the execution of said notes and mortgages; that the trial court was in error in sustaining such defense.

Error from District Court, Okmulgee County; L. L. Cowley, Special Judge.

Suit to enforce an attorney's lien by Herbert E. Smith against Crittenden Smith, R. M. Pratt, C. W. Holbrook, Fred M. Carter, G. E. Cassity, and Theodore Grayson, with petitions in intervention by M. F. Graham, Crittenden Smith, and another. Judgment for plaintiff against defendant Grayson, declared to be a first lien on land in controversy, title to which was adjudged to be in defendant Holbrook, and judgment for defendants Carter and Cassity, and for defendant Smith

and for Graham on notes executed by defendant Grayson. Motions for new trial denied, and Crittenden Smith and Graham bring error, and seek a reversal of the judgment, and defendant Holbrook seeks a reversal of the judgment as to plaintiff Smith. Affirmed in part, and reversed in part.

Charles A. Dickson, C. B. McCrory, and Cochran & Ellison, for plaintiffs in error.

H. E. Smith, G. E. Cassity, and F. M. Carter, for defendants in error.

JOHNSON, J. This suit was instituted in the district court of Okmulgee county, Okla., on July 25, 1913, by Herbert E. Smith, an attorney at law, plaintiff, against Crittenden Smith, R. M. Pratt, C. W. Holbrook, Fred M. Carter, G. E. Cassity, and Theodore Grayson, defendants, to enforce an alleged attorney's lien based upon attorney's fees contract executed to him and C. B. McCrory, an attorney, by the guardian of a minor Creek freedman citizen, approved by the proper probate court, and signed by said minor, against 120 acres of land in Okmulgee county, Okla. M. F. Graham and Crittenden Smith and Bank of Commerce of Okmulgee, Okla., later filed their petitions of intervention. We will designate the parties as they appear in the court below.

The record discloses that Herbert E. Smith, the plaintiff in the court below, recovered judgment for $1,200 against the defendant below, Theodore Grayson, which was declared to be a first and prior lien upon the land in controversy, the legal title to which was by said judgment decreed to the defendant below, Carleton Holbrook. The records further disclose that the land involved herein was the surplus allotment of Theodore Grayson, a Creek freedman citizen, enrolled as such opposite No. 769 upon the Freedman rolls in the name of "Fred Bruner," who arrived at his majority during the month of August, 1912, and was of full legal age on August 31, 1912, all of which is admitted by all parties herein.

The defendant in error Carleton W. Holbrook, an attorney with offices at Okmulgee, Okla., was desirous of acquiring title to said surplus lands of Theodore Grayson, alias Fred Bruner, together with his homestead allotment, and while said Grayson was a minor, less than 18 years of age, under the guardianship of his father, John Grayson, with the said Holbrook as his attorney, on or about the 10th day of September, 1908, in order to execute such desire, a marriage license was procured from the county court of Tulsa county, Okla., for the marriage of said Grayson to one Ida Johnson, which marriage ceremony, under such license, was consummated at Muskogee, Muskogee county,

Okla., and thereafter, at said place and on said date, a warranty deed was taken from said Grayson and wife in favor of said Holbrook, covering said surplus and homestead lands of Grayson, for an alleged cash consideration of $4,000. After the making of said deed, said Holbrook executed a mortgage to one W. W. Fuller on October 5, 1908, for $2,500, covering said premises, and again, on December 10, 1908, procured another and further warranty deed in his favor to be executed by said Grayson at Tulsa, Okla., for a recited cash consideration of $4,000, and on January 9, 1909, said Holbrook executed a deed in favor of one Walter W. Morton, for a recited cash consideration of $2,000, to the N. ½ of said N. W. ¼, section 12-13-12.

During the fall of 1909, the conditions above stated becoming known to the father and guardian of said minor, John Grayson, for the conservation and protection of the right of said minor to his said allotments then claimed by said minor's former attorney, Holbrook, by virtue of said instruments, and in order to reduce said premises to his possession as such guardian, the said Holbrook then being in possession and claiming the right thereto, and wholly denying the right of said minor to said premises, filed in the county court of Okmulgee county, on or about September 30, 1909, his petition asking the court to make an order authorizing him, as such guardian for said minor, to employ counsel to file suit to cancel said instruments above stated and to reduce said premises to his possession, and on said date said court granted the prayer of said petition and made its order authorizing John Grayson, as guardian of Theodore, to employ counsel to said ends. Thereafter the defendant in error H. E. Smith was employed, and thereafter, about October 2, 1909, he filed in the district court of Okmulgee county a petition in favor of John Grayson, guardian of Theodore Grayson, a minor, against Holbrook et al., No. 1446.

The above case being dismissed, and John Grayson being absent, and his whereabouts being unknown, said Theodore Grayson, while a minor over 18 years of age, on July 14, 1910, entered into a contract employing the defendant in error H. E. Smith sole attorney for the purpose of filing said suit to cancel said instruments held as aforesaid and to recover the possesison of said land for him, wherein he agreed to pay for said services, in case of success, an undivided one-half interest in the recovery made, which contract was timely recorded in the office of the register of deeds of Okmulgee county.

Carrying out said agreement, and for the purpose aforesaid, and the said Theodore Grayson having selected one Charles F. Dun-

bar as his next friend to represent him in said action, the defendant in error H. E. Smith, on or about August 4, 1910, filed in said district court in behalf of said Theodore Grayson against Holbrook et al. a petition seeking the cancellation of said instruments and possession of said premises, which was numbered in said court No. 1711, and the defendant in error, at the time of the filing of said petition, had indorsed thereon over his name the words "Lien claimed." After No. 1711 had been filed, on March 21, 1911, for the proper protection of Theodore Grayson, said county court appointed Charles F. Dunbar guardian of the person and estate of said minor, in whose favor said suit had been instituted by the defendant in error as aforesaid and was pending, who on said date filed in said county court his petition, asking leave to employ counsel for the continuance of said suit instituted by him as said next friend of Theodore Grayson.

By virtue of said petition said county court on said date made its order approving the verbal agreement of said guardian, which was on August 3, 1911, reduced to writing as follows:

"That the instruments and representations made in said petition are true, and that the agreement made with the attorneys mentioned therein, to wit, Herbert E. Smith and Charles B. McCrory, was and is a reasonable and fair contract. Therefore it is hereby ordered, adjudged, and decreed that said agreement be and the same is hereby approved and confirmed."

Thereafter, on August 3, 1911, said guardian and minor filed in said county court their petition, wherein they represented to it:

"Represents that all of the property of said minor involved in litigation, as heretofore, on March 25, 1911, represented by this guardian of this court, and as set forth by the recitals in a contract, a duplicate of which is hereby attached; that to recover and preserve the property and estate of said ward it has been and is absolutely necessary for this guardian to employ counsel to represent the interests of said minor as heretofore represented, the petitioner prays that the contract, a copy of which is annexed and by virtue of which said guardian retained said attorneys, be considered, and in all respects approved." (This petition was signed by Theodore Grayson.)

Attached to said petition was a duplicate of said contract, signed by Dunbar, as guardian, and Smith and McCrory, and was duly acknowledged before the county judge, and signed and sworn to by Theodore Grayson, then near 20 years of age, and which was duly approved by said court on August 3, 1911, and thereafter recorded in Book M 48,

at page 592, in the office of the register of deeds of Okmulgee county. On August 3, 1911, said county court made its order upon said petition and contract, in which, among other things, it appears:

"And the court having examined said petition, heard evidence, and considered said contract and all the terms thereof, finds that it is necessary for the recovery and preservation of said ward's estate and property that counsel be employed as per the terms of said contract, and that the terms thereof are reasonable and fair, therefore it is hereby ordered and adjudged that the action of the guardian, Charles F. Dunbar, in entering into the said contract with Herbert E. Smith and Charles B. McCrory, was and is proper and necessary, and said contract is in all respects approved by this court."

During all of said time, as shown by the record herein, the defendant in error was actively engaged in behalf of said Theodore Grayson and his estate in an earnest endeavor to preserve his rights and interests in and to said lands, the possession and the title of which were claimed tenaciously by Holbrook, and were the sole and entire estate of said then minor, Grayson, which undeniably continued until Theodore Grayson arrived at his majority on or before August 31, 1912, and after attaining his majority, on, to wit, December 11, 1912, the said Theodore Grayson entered into a contract in writing affirming his contract as made with the defendant in error H. E. Smith, and for an attorney's lien upon said lands therefor.

Claims of R. M. Pratt, F. M. Carter, and G. E. Cassity.

The note of $3,000 sued upon herein by R. M. Pratt, and the note of $1,000 sued upon herein by Carter and Cassity, and the mortgage to secure the same bear date December 11, 1912, and were executed in favor of the respective parties by Theodore Grayson. This same note for $3,000 and various other notes in small amounts, with mortgages to secure the same, all given by Theodore Grayson to R. M. Pratt, and by Pratt delivered to the plaintiffs in error Crittenden Smith and M. F. Graham, were by them declared upon in their cross-petition filed herein, alleging that they were the holders thereof in due course, the same having been placed with them as collateral security by the said R. M. Pratt to secure his indebtedness to them, and the judgment of the court below held that the note for $3,000 given by Grayson to Pratt on December 11, 1912, was void, together with the mortgage securing the same, except that portion of the mortgage given to secure the note for $1,000 executed by Grayson to defendants Carter and Cas-

sity, and held that the defendants Carter and Cassity should recover on said note, and were decreed a second lien upon the premises to secure the same, amounting, principal and interest, to the sum of $1,359.45, and further holding that the amount due on the small notes executed by Grayson since December 11, 1912, amounting in the aggregate, principal, interest, and attorney's fee, to $863.73, was a valid claim against Theodore Grayson, and judgment was rendered accordingly for the same in favor of the defendants Graham and Smith, except the attorney's fee of $76.22, which amount was in favor of Carter and Cassity, and decreed to be a third lien upon the premises in controversy, and it is from such judgment that the plaintiffs in error, Crittenden Smith, M. F. Graham, and Carleton W. Holbrook, have prosecuted this appeal.

The defendants Bank of Commerce of Okmulgee, Okla., and Theodore Grayson, did not appeal from the judgment below, and are making no opposition to the judgment in favor of the defendant in error H. E. Smith, but the same is final and conclusive as to it and him, as well as to Carter. Cassity and Pratt are in like status, which leaves Crittenden Smith, M. F. Graham, and Carleton W. Holbrook alone asking for a reversal of the judgment below, and only Holbrook seeking a reversal of the judgment below as to the defendant in error H. E. Smith.

The defendant Holbrook filed his motion for new trial, alleging:

(1) Irregularities in the proceedings of the court by which this defendant was prevented from having a fair trial.

(2) Accident and surprise which ordinary prudence could not have guarded against.

(3) The decision, judgment, and decree of the court as against the defendant or the land in controversy is not sustained by sufficient evidence and is contrary to law.

(4) Errors of law occurring at the trial and excepted to by said defendant at the time.

(5) That the decision and decree of the court, allowing and decreeing a lien in favor of G. E. Cassity and Fred M. Carter to the amount of $1,000 and interest, is not sustained by sufficient evidence and is contrary to law.

(6) That the decision and decree of the court allowing and decreeing a lien in the property in controversy in favor of the plaintiff Herbert E. Smith in the sum of $1,200 is not sustained by sufficient evidence and is contrary to law.

(7) That the decision and decree of the court allowing and decreeing a lien on the property in controversy in favor of R. M. Pratt in the sum of $763.21 is not sustained

by sufficient evidence and is contrary to law.

Which motion was overruled and excepted to, and from which he appeals and assigns error.

The defendants Crittenden Smith and M. F. Graham filed their motion for new trial, complaining of the judgment for the following reasons:

(1) For that the same is not sustained by sufficient evidence.

(2) For that the same is contrary to the evidence.

(3) For that the same is contrary to law.

(4) For that there was error in the assessment of the amount of the recovery.

(5) For that the court erred in the exclusion of evidence offered upon the part of the interveners.

(6) For that the court erred in the admission of evidence over objection and exception of those interveners.

(7) For errors of law occurring at the trial and excepted to by those interveners.

(8) Irregularity in the proceedings of the court by which the party was prevented from having a fair trial.

Which was overruled and excepted to, from which they appeal and assign error.

We will not consider the assignments of error relied upon for a reversal by the respective parties, in their numerical order, but in what seems to us to be their logical order; therefore the first that we will consider is "that the trial court erred in trying the said case without a jury," and upon that question we first notice section 20 of article 7 of the Constitution of Oklahoma, which provides that—

"In all issues of fact joined in any court, all parties may waive the right to have the same determined by jury, in which case the finding of the judge upon the facts shall have the force and effect of a verdict by jury."

And section 5016, Rev. Laws 1910, reads as follows:

"The trial by jury may be waived by the parties, in actions arising on contract, and with assent of the court in other actions, in the following manner: By the consent of the party appearing, when the other party fails to appear at the trial by himself or attorney. By written consent, in person or by attorney, filed with the clerk. By oral consent, in open court, entered on the journal."

The provisions quoted provide that, in a civil action, the right to a trial by jury may be waived by the conduct of the parties; and where the parties to any civil action fail to make a timely request for a jury trial, and the cause is set for trial by the court for a day certain, and the parties appear in person and by attorneys, and submit their testimony to the court without a jury, and the record in the trial court is silent upon the question of a jury trial, this is tantamount to an express waiver of a trial by jury, and an objection thereto and demand for a jury thereafter will not be considered by this court. We cite in support of this holding the decisions of this court in Farmers' National Bank of Tecumseh v. McCall et al., 25 Okla. 600, 106 Pac. 866, 26 L. R. A. (N. S.) 217, and Landrum v. Landrum, 50 Okla. 752, 151 Pac. 481. In the opinion of this court in the latter case it was said:

"The right to a trial by jury is regarded as something sacred, of which no person should be deprived without his consent. The waiver of jury need not, however, be by written stipulation, and as a matter of fact is rarely ever done in that manner. The parties usually express themselves on the subject in open court when the case is called, and the court sets the case down for trial, either with or without jury, in accordance with such announcements. While in this case the record does not show that counsel for either party expressly announced a waiver of jury, yet the court evidently understood that they both desired to waive a jury, and so stated to them both in open court, and they could not have failed to understand that he intended to try the case on its merits."

We have searched the record carefully, and find that no demand or request for a jury in this case was ever at any time made by any party thereto, but that the record is silent upon that question. We therefore hold that, in view of the actions of the parties in the court below as disclosed by the record, and in failing to make timely request for a jury trial, they waived a jury in the court below, and that they cannot now be heard to complain at the action of the trial court in proceeding with the trial of the cause upon its merits without calling a jury.

It is also urged by the plaintiffs in error Crittenden Smith and M. F. Graham that the court erred in refusing a request for special findings of fact and conclusions of law. It appears from the record that after the evidence was offered, and argument of counsel had been had, the court announced his view upon the entire case as to his conclusions found.

Counsel for these complainants then asked the court to make a special finding of fact and conclusions of law, which was denied, because the request had not been made until after the court had announced his conclusions. This is urged as prejudicial error. Section 5017, Rev. Laws 1910, provides:

"Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its findings, except generally * * *

unless one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial."

In the case of German State Bank of Elk City v. Ptachet et al., 67 Oklahoma, 169 Pac. 1096, this court, in an opinion by Mr. Justice Owen, said:

"The purpose of the statute is to enable the party to save his exception to the questions of law decided, where there might be a different conclusion depending upon the facts found."

After discussing the facts in the case, and continuing, he said:

"But, aside from this, the request came too late. A general finding of facts being conclusive against the losing party as to every fact in controversy, he may not defer his request for a special finding until after taking his chance on winning, then by making the request have all the benefits that he might have received from a special finding. The statute clearly implies the request before the decision of the court is announced. The right is given either party to require the special finding, 'with the view of excepting to the decision of the court.' * * * When the request is not made until after the court has announced his general findings of facts and conclusions, the party will be deemed to have waived the right to have the special findings."

The defendants Crittenden Smith and M. F. Graham's assignments of error. Nos. 1, 2, 3, 4, 5, 6, and 15 will be considered together, and in this connection we will say that from a careful examination of the entire record it is disclosed that the defendant Theodore Grayson attained his majority on August 31, 1912, and that the note of $3,000 payable to R. M. Pratt, and the mortgage to secure the same upon the land in controversy, were executed by Theodore Grayson on December 11, 1912, and that said mortgage was filed for record with the register of deeds on said day at 10 o'clock a. m. and that the note was made due and payable June 11, 1913, and that the same was delivered by Pratt to the defendants Crittenden Smith and M. F. Graham as collateral security for his indebtedness to them on or about the 3d day of May, 1913, and that the note for $1,000 given by Theodore Grayson was delivered on the same day, and matured upon the same date of the said $3,000 note, and was secured by the same mortgage, and that the same was indorsed by Pratt to the defendants Cassity and Carter, and that the said Theodore Grayson executed to the said defendant Pratt various negotiable promissory notes and mortgages covering the said land, which were sued upon by the defendants Crittenden Smith and M. F. Graham herein, one of which, for $61, was dated the 21st day of

December, 1912, and due on the 21st day of June, 1913, providing for $25 additional as attorney's fee, and 11 other notes, dated at various times during the interval between the 12th day of January, 1913, and the 16th day of June, 1913, aggregating, at the time of filing the defendants Crittenden Smith and M. F. Graham's petition of intervention, the sum of $689.31, and $123.52 as attorney's fee, all of said notes bearing interest from date at the rate of 10 per cent. per annum, and that the mortgages covering the land involved herein were executed by the said Theodore Grayson and placed of record prior to the 13th day of June, 1913, and that said described notes were delivered to the defendants Crittenden Smith and M. F. Graham, by the said defendant Pratt, on or about the 3d day of May, 1913, as collateral security for the said Pratt's indebtedness to the said Smith and Graham, and that on February 28, 1916, the date of filing their petition of intervention, there was due upon the said notes so held by them as collateral security the sum of $3,958.23 as principal and interest, and the sum of $395.83, as attorney's fee, with 10 per cent. interest per annum from said date, and that said notes and mortgages, described as aforesaid, are the identical notes and mortgages sued upon herein, in cross-petition of the defendant R. M. Pratt.

It is further disclosed by the record that the deed executed by the defendant Theodore Grayson to the defendant Carleton W. Holbrook was dated June 27, 1913, which covers the land in controversy herein.

Upon the trial hereof in the court below, the defendant R. M. Pratt testified to the execution of the notes and mortgages by Theodore Grayson, that he (Pratt) delivered the above-described notes declared upon herein by the defendants Crittenden Smith and M. F. Graham as collateral security for his indebtedness to them, but that he was unable to state the date upon which the same were so delivered. The defendant M. F. Graham testified that the same were so delivered on or about May 3, 1913. The defendant M. F. Graham testified to the facts stated upon his direct examination concerning same. The defendant R. M. Pratt testified, upon recross-examination by Mr. Ellison, as follows:

"Q. You were talking this morning to Mr. McCrory about this case in this room a few minutes ago; do you remember that conversation? A. About this case? Q. Yes, sir. A. Yes. Q. What was that conversation? A. He asked me who I gave this money to, and I told him. Q. Is Mr. McCrory your attorney? A. No, sir. Q. Whose attorney is he? A. I presume he is Mr. Holbrook's attorney. Q. Mr. Holbrook and you—are your interests

identical in this case? A. I don't see it that way. Q. His are against you? A. Yes, sir. * * * Q. Are you still interested in procuring a judgment for the foreclosure of the mortgage in this suit? A. I most certainly am. Q. In the amount of something like $4,000? A. Yes, sir. Q. You have, however, assigned all your interest in that money over to the interveners Smith and Graham, or to the Bank of Commerce? A. Yes, sir; that is to apply on my indebtedness. Q. So that, in any event, whatever you might recover in this case will go to one of the interveners? A. Yes, sir. By Mr. Ellison: That is all."

Recross-examination by Judge McCrory:

"Q. To apply on your indebtedness relating only to the assignment to the Bank of Commerce; you don't owe Smith and Graham, do you? A. That requires an explanation; no further than the money we have put into this deal. Q. Your proportion? A. My proportion. Q. And the assignment made to the Bank of Commerce was to apply on your indebtedness to the bank? A. On my indebtedness."

Defendants Crittenden Smith and M. F. Graham insisted that the defendant in error Holbrook was not entitled to contest the notes, or oppose a foreclosure of the mortgages upon the lands purchased by him, for the reason and upon the ground that upon June 27, 1913, which was at a time subsequent to the execution and recording of the mortgages sought to be foreclosed, said defendant in error purchased the land described in said mortgages, paying therefor the amount of $400. Either the consideration of this deed was so grossly inadequate as to shock the conscience of a court of equity, as to prevent said plaintiff in error from evoking equitable principles on his behalf, or it was understood that he purchased said lands subject to the liens of the mortgages thereon, which amounted to approximately $4,000. No witness testified that the lands at the time of the purchase by him were worth less than $3,400 and a majority of the witnesses fixed their value thereon at from $7,000 to $8,000.

At the time of the purchase Holbrook was charged with knowledge of the existence of these mortgages by reason of their having been recorded, and no doubt had personal knowledge of their existence. But, aside from this consideration, Holbrook is in no position to urge the question of fraud in the execution of said notes and mortgages. They were made by Theodore Grayson, were payable to Pratt, and the amount thereof undoubtedly entered into the consideration for the purchase of said lands by Holbrook. He did not acquire title until after their execution and delivery. Therefore the title he acquired was subject to the amount thereof. No representations were made to him by

Pratt concerning the subject-matter of the notes and mortgages at the time of the purchase, nor did he rely upon the representations made to Grayson, nor alter his position to his prejudice in the matter by reason of any representations made by Pratt to Grayson. Not having been deceived in any way, nor defrauded by reason of any matter entering into and forming a part of the consideration for the notes and mortgages, but having purchased the premises subject to the liens created by said mortgages, he is not in a position to complain of the fraud, if any, practiced by Pratt upon Grayson. 12 R. C. L. pp. 324, 355; 20 Cyc. p. 80; Hamilton v. Mihills, 92 Wash. 675, 159 Pac. 887; 1 Elliott on Cont. p. 126.

Our recording statute (section 1155, Rev. Laws 1910) reads as follows:

"Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record, is constructive notice of the contents thereof to subsequent purchasers, mortgagees, incumbrancers or creditors."

This statute applies to real estate mortgages. 27 Cyc. 1155, note 14, and cases cited. In the case of Cornish v. Woolverton, 32 Mont. 456, 81 Pac. 4, 108 Am. St. Rep. 598, it was held that a mortgage was a conveyance within the meaning of recording laws, and that—

"Where, after the assignment of a mortgage had been recorded, a purchaser from the mortgagor paid the debt to the assignor, which executed a release, a subsequent purchaser from the person who paid the mortgage was charged with notice that the assignor had no power to execute the release, and hence was not a purchaser for value free from incumbrances.

In the case of Stark et al. v. Kirkley et al., 129 Mo. App. 353, 108 S. W. 625, it was said:

"Under Rev. Stat. 1899, sec. 924, providing that written instruments affecting land, when certified and recorded as thereinbefore prescribed, shall, from the time of filing for record, impart notice to all persons of the contents and that subsequent purchasers shall be deemed to purchase with notice, plaintiffs, in an action to enforce equitable mortgages against the mortgagor's purchasers, proved that the purchase was made with the knowledge of their rights by showing that the contracts sued on had been signed, acknowledged, and recorded before defendants' purchase."

We think that the cases cited are in point, and that the principles announced are applicable to the situation disclosed by the record in this case. We have examined the evidence, and we find that the judgment of the trial court, holding that the note of $3,000 and the mortgage to secure the same were

void as to the defendants Crittenden Smith and M. F. Graham was clearly against the weight of the evidence and the law.

We find that the defendants Crittenden Smith and M. F. Graham were holders in due course of the note for $3,000 and entitled to have the mortgage given to secure the same foreclosed, and as such were entitled to a judgment against Theodore Grayson for the amount due upon said note including attorney's fee, and to have the mortgage foreclosed upon the land held by Holbrook, subject to the liens of Herbert E. Smith and Carter and Cassity, and that the honorable trial court was in error in holding said note and mortgage void.

We have carefully examined the records in this case, and the assignments of error by the defendant Holbrook, and fail to find wherein he was deprived of any substantial right by the actions of the trial court; but upon the other hand it clearly appears from the record before us that he was the prime mover of and put in motion the condition that gave rise to all the litigation over the estate of the defendant Theodore Grayson, disclosed by this record, and that somehow, which is not fully shown, he was enabled to secure the legal title to the land in controversy, but, however it may have been accomplished, it is unfortunate, to say the least.

By his deed of June 27, 1913, he took the same subject to all the rights and equities of the plaintiff, Herbert E. Smith, and the defendants Carter and Cassity, and Crittenden Smith and M. F. Graham, including the right to have their respective liens foreclosed upon the land in controversy, for the respective amounts due each, including the $3,000 note claimed by Crittenden Smith and M. F. Graham.

The judgment of the trial court as to the plaintiff, Herbert E. Smith, should not be disturbed, as he was clearly entitled to recover as to all the relief granted therein, and the same is likewise true as to the defendants Carter and Cassity.

The judgment and decree awarding to Crittenden Smith and M. F. Graham the sum of $787.51, and Carter and Cassity the sum of $76.22, as attorney's fees, and a third lien upon the land will not be disturbed, and all the foregoing judgments and decrees as rendered will be affirmed.

The defendant Theodore Grayson answered by general denial, which was verified, but upon the trial offered no testimony. It was testified to by R. M. Pratt, Carter, and Cassity that the note for $3,000 in favor of Pratt, and the mortgage securing the same, were both signed by Theodore Grayson. That

part of the judgment of the trial court declaring that the note executed by said allottee to the defendant Pratt, for $3,000, on December 11, 1912, is void, together with the mortgage securing the same, will be reversed, and this cause remanded, with directions to the trial court to render judgment in favor of Crittenden Smith and M. F. Graham for the amount due upon said note, principal and interest, and attorney's fees, and declaring the same to be a third lien upon the land in controversy, and for foreclosure of the mortgage.

All the Justices concur.