OSCN Found Document:IN THE MATTER OF E.J.T.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 IN THE MATTER OF E.J.T.
2024 OK 14
Case Number: 120735
Decided: 03/05/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 14, __ P.3d __

 

 

In the Matter of E.J.T. and C.T.T., Deprived Children,

BRIANNA TATUM, Appellant,
v.
STATE OF OKLAHOMA, Appellee.

ON WRIT OF CERTIORARI TO THE 
COURT OF CIVIL APPEALS, DIVISION I 

¶0 Mother sought certiorari review from the Court of Civil Appeals' Opinion affirming the trial court's final order terminating her parental rights following a non-jury trial. On certiorari, Mother preserved only one claim of error, whether the record supports a finding that Mother waived jury trial in a parental termination proceeding. To resolve this question we must determine the following: (1) whether a Court Minute memorializing a contemporaneous court proceeding is sufficient to support a party's oral consent to waiver of a jury trial in a parental termination proceeding; and (2) whether a party who proceeds to trial, without any demand for jury trial, and without objecting to non-jury trial has waived any right to a jury trial? We answer both questions in the affirmative. The opinion of the Court of Civil Appeals is vacated, and the judgment of the trial court is affirmed.

COURT OF CIVIL APPEALS' OPINION VACATED; 
TRIAL COURT'S ORDER TERMINATING 
PARENTAL RIGHTS IS AFFRIMED

Bill Chaffin, Attorney at Law, Davis, OK, for Appellant.

James English, Murray County, Assistant District Attorney, Sulphur, OK, for Appellee.

Edmondson, J.

¶1 Mother, Brianna Tatum sought certiorari review of an unpublished majority opinion from the Court of Civil Appeals, Div. 1 affirming the termination of Mother's parental rights. Mother challenged every ground listed in the termination order. The Court of Civil Appeals noted that where multiple grounds for termination are challenged on appeal, it can affirm termination orders where one statutory ground exists. 10A O.S. 2015 Supp., § 1-4-904 (B); Matter of J.J.P., 2018 OK CIV APP 5, ¶ 15, 408 P.3d 218, 223. The Court of Civil Appeals affirmed on the basis that all conditions of 10A O.S.2015 Supp., § 1-4-904 (B) (17) were met: (1) both children were younger than four years old at the time of foster care placement; (2) at the time of filing the application to terminate parental rights, the children had been in foster care for at least six of the preceding twelve months; (3) that the children could not safely be returned to the home of Mother; and (4) and termination was in the best interest of the children.

FACTS AND PROCEDURAL HISTORY 

¶2 On July 2, 2020, DHS made an emergency removal of Brianna Tatum's (Mother) children and placed them in foster care.[1] The ages of the children on July 2, were two (2) years ten (10) months old, and eight (8) months old. Both children were under the age of four (4) years old on August 31, 2020, sixty (60) days after the date they were removed from the home.[2] Prior to removal, the children were living with their legal guardian and grandmother, in conditions described by the Department of Human Services (DHS) as "deplorable and unsafe."

¶3 On July 17, 2020, the Murray County assistant district attorney initiated this action against Mother seeking a determination that the children were deprived for the following reasons:

1. Failure to protect. That the mother has allowed the children to live in deplorable and unsafe conditions while taking no action to remove or protect them.
2. Illegal Drug Use. That the mother has a history of using illegal drugs.
3. Financial Instability. That the mother did not graduate high school and has never been employed; further that she is unable to meet the financial needs of the children.
4. Mental Health Instability. That the mother has mental health conditions for which she should obtain and/or maintain treatment.
5. Incarceration Due to Criminal Activity. That the mother has been incarcerated for illegal activity.
6. That the children are at further risk of harm if left in the custody of the mother.

Mother stipulated to each of the above allegations. The children were adjudicated as deprived on December 9, 2020.

¶4 The trial court entered an Order of Disposition on January 12, 2021, incorporating the Individualized service plan (ISP) developed by DHS with the recommendation for reunification. The ISP noted the following:

Ms. Breanna Tatum failed to protect her children in that she does not have suitable housing for the children to reside in and allowed them to reside with Mrs. Judy Tatum in deplorable and unsafe conditions. Ms. Breanna Tatum continues to abuse illegal drugs. Ms. Breanna Tatum has no employment which left her without the ability to provide for her children financially. Ms. Breanna Tatum appears to have unmanaged mental health issues as evident by her continued substance abuse, violent relationships and criminal activity.[3]

To achieve reunification, the Court ordered Mother to comply with the provisions of the ISP to correct the conditions that led to the deprived status. Mother signed the ISP; the Disposition Order contains the following emphasized language: "The ISP is incorporated herein and made a part of the dispositional order of the court and all parties are hereby ordered to fully comply with its provisions."[4] Mother was provided a copy of the ISP with the specific expectations and milestones necessary for reunification. This ISP included the following mandatory requirements:

1. Substance Abuse: Ms. Tatum shall complete a Substance Abuse Assessment and follow all recommendations; shall not use any illegal drugs or alcohol and shall only take medications as prescribed by healthcare professional; Mother shall submit to random urinalysis as requested by DHS; Ms. Tatum shall attend, participate and complete a certified long term rehabilitation program, follow all recommendations; shall demonstrate successful completion and provide Certificate of Completion and articulate a realistic relapse plan to include arranging for the safety and security of her children in the event of relapse;

2. Mental Health: Mother shall participate in individual counseling and follow the recommendations; shall demonstrate a change in her behaviors, ie. putting her children's needs before the needs of herself; to maintain a healthy, stable, positive mental health state so as not to expose her children to dangerous and neglectful situations;

3. Financial security: Ms. Tatum shall maintain a legal source of adequate income in order to find and maintain a safe and stable home; to provide financial support for the daily needs of her children; create and follow a weekly budget;

4. Child Well Being: Ms. Tatum shall attend, participate and complete DHS parenting course with certificate of completion; shall be able to effectively demonstrate principles learned in parenting course during visitations with children and establish parental relationship with children;

5. Medical: Ms. Tatum shall obtain and maintain primary care physician and dentist for herself and children; upon reunification will maintain the physician and dental health for herself and children.

The ISP also included the following cautionary language emphasized with bolded lettering:

TO THE PARENT:

THIS IS A VERY IMPORTANT DOCUMENT, ITS PURPOSE IS TO HELP YOU PROVIDE YOUR CHILD WITH A SAFE HOME WITHIN THE REASONABLE PERIOD SPECIFIED IN THE PLAN. IF YOU ARE UNWILLING OR UNABLE TO PROVIDE YOUR CHILD WITH A SAFE HOME OR ATTEND COURT HEARINGS, YOUR PARENTAL AND CUSTODIAL DUTIES AND RIGHTS MAY BE RESTRICTED OR TERMINATED OR YOUR CHILD MAY NOT BE RETURNED TO YOU. 

The trial court noted in the Disposition Order that:

The proposed ISP was reviewed in open court with the parent(s) or legal custodian who acknowledged that she understood the conditions to be corrected, the plan requirements and that failure to correct the conditions that led to the deprived adjudication and/or failure to follow the orders of the court and/or failure to appear in court could result in the termination of their parental rights to the child.[5]

¶5 Three months later, on April 8, 2021, the DHS caseworker reported that Mother was making progress with respect to her ISP. She was in a substance abuse program, participating in group activities, participating in counseling, visiting her children per the recommended schedule, and completed the DHS parenting course. In January 2021, Mother had married, and resided at the Sober Living facility with her husband. At the April permanency review, the trial court described Mother's progress with the ISP as "adequate."

¶6 Less than two months later, in May, 2021 Mother's progress halted when she made the following choices: (1) She left the drug treatment program before completion; (2) she stopped communicating with her DHS caseworker; (3) she ceased visiting or communication with her children; (4) she left the state of Oklahoma with her new husband, as he was "on the run" to avoid a criminal arrest warrant from another Oklahoma county; and (5) she failed to respond to two separate requests from DHS for drug testing. The couple navigated through several states before getting arrested and held in Georgia.

¶7 The DHS caseworker noted in the ISP Progress Report filed September 23, 2021:

1. On June 8, 2021, DHS was notified that Mother no longer resided at Wayfinder Sober Living and had left two to three weeks prior per the Wayfinder program director; she did not complete her rehabilitation program.

2. DHS contacted Mother- Mother texted that she and her husband had "bought a house" in Sulphur and that she completed the Sober Living program on June 4, 2021, and would be moving into the new house in two weeks; in this same conversation she admitted that she was living in a motel in Ardmore until the closing on the house. The caseworker indicated that Mother was considered homeless as she has no stable residence and had left the Sober Living program.
3. Prior to June 8, Mother was in weekly and sometimes 2-3 times a week contact with her caseworker. After June 8, there was no regular contact.

4. Visitation supervised by DHS had been weekly, Mother was attending visitation with her children via transportation with DHS each week to Norman; she has not visited or communicated with her children since June 2021.
5. Mother failed to show up for a meeting with DHS caseworker set for July 8, 2021.
6. Mother did not respond to urinalysis test requests on July 20, 2021, or August 16, 2021, which are considered positive without the test being taken.
7. Mother had not been in contact with DHS since July 7, 2021; however, she contacted a caseworker on September 9, 2021, to advise she was incarcerated in Georgia at the Henry County jail.
8. Mother gave birth to her fourth child and the baby was left with her husband's sister.
9. Mother's children, E.J.T. and C.T.T. were observed to be happy and active in their foster home and bonded with their foster parents.

¶8 The district attorney filed an Application for Termination of the Parental Rights of Mother on October 6, 2021. The children had been in foster care since July 2, 2020. In support of this request the district attorney stated the following:

1. That an Order of Disposition was entered on January 12, 2021, and incorporated the ISP and the mother was ordered to comply by correcting certain conditions.

2. That Mother has not had custody of E.J.T. and C.T.T. for at least six (6) out of the last twelve (12) months prior to filing the application and she has willfully failed, refused or neglected to contribute to the support of the children as specified by an order entered by a court of competent jurisdiction adjudicating the duty, amount and manner of support.

3. That the children younger than four (4) years of age at the time of placement have been placed in foster care by DHS for at least six (6) of the twelve (12) months preceding the filing of the application and the children cannot be safely returned to the home of the mother.

4. A finding that:

a. The mother has failed to correct the conditions which led to the deprived adjudication of the children, and the mother has been given at least three (3) months to correct the conditions, including but not limited to:

i. The mother has failed to obtain/provide proof of obtaining a substance abuse assessment.

ii. The mother has failed to attend/participate in individual counseling.

iii. The mother does not have suitable employment to support the needs of the child.

iv. The mother has failed to obtain suitable housing with working utilities for the children to reside in.

v. The mother has failed to demonstrate the principals learned in her parenting classes.

vi. The mother has failed to maintain contact with the Department of Human Services.

vii. The mother has failed to maintain visitation with the children.

5. The mother is incarcerated, and the continuation of her parental rights would result in harm to the children.

6. Termination of the mother's parental rights is in the best interest of the children.[6]

¶9 In December 2021, the caseworker's recommendation shifted from "reunification" to "adoption."[7] The trial court, with the agreement and request of the parties, struck and reset the hearing date for the initial appearances several times. On May 5, 2022, the initial appearance on the State's application to terminate parental rights of Mother was held. The trial court noted in its May 5, 2022, Court Minute:

Respondent Mother's attorney, Bill Chaffin, appears in person. Respondent Mother appears via tele-conference from the Henry County Jail, McDonough, Georgia. Respondent Mother was advised as to the State's Allegations and her rights to an attorney, to a Jury Trial or Non-Jury Trial, and rights to be present and to cross examine witnesses. Respondent Mother waives jury trial and requests this matter be set for non-jury trial. Respondent Mother also agrees to appear via tele-conference or video conference for trial if she is still incarcerated. (emphasis added).[8]

A copy of this Court Minute was provided to all parties. Mother's attorney raised no objection to his client's waiver of jury trial at this initial appearance and he never made a demand for jury trial. Mother never filed a pleading with the trial court asserting the Minute Order was in error, and never filed a pleading making a demand for jury trial.

¶10 The trial court conducted the non-jury trial on the Application for Termination of the Parental Rights of Mother on September 1, 2022. Mother appeared by video conference and Mother's lawyer was present in the courtroom. At trial, Mother never objected to her waiver of jury trial, and never demanded a jury trial. Instead, she proceeded without objection to a non-jury trial. Mother raised other unrelated objections which were overruled and were not raised on appeal or certiorari.[9] Mother has never asserted that she did not waive her right to jury trial at the initial appearance, only that the record is insufficient to establish her waiver.

¶11 The DHS caseworker testified at the termination hearing that:

1. Mother failed to obtain a substance abuse assessment.

2. Mother left the substance abuse treatment facility and failed to complete a long-term drug rehabilitation program.

3. Mother never provided any drug and alcohol tests, urinalysis, or hair follicle tests.

4. Mother has not visited her children since June 2021; according to the foster parents, Mother has not attempted any phone calls to her children since the incarceration.

5. DHS caseworker believes that the children are currently in a safe environment with the foster family.

6. DHS caseworker believes the children would face threat of harm if returned to Mother's custody and if her parental rights were not terminated.

7. DHS caseworker testified she believes that it is in the children's best interest to have Mother's parental rights terminated.

8. DHS caseworker testified that Mother failed to correct the conditions that led to children being placed in DHS custody.

¶12 Mother admitted to knowing she was required to do the following: (1) parenting classes; (2) mental health counseling; (3) drug rehabilitation; and (4) visitation with children. Mother testified that she did begin to work on the required ISP items, but for only five months. Mother admitted to leaving the rehabilitation program without completing it because she chose to leave the state with her husband who was a fugitive from justice. When asked if she considered the impact on her children when she made the decision to leave Oklahoma, her only response was: "I don't know."[10] When asked why she left Sober Living, the drug treatment facility, she responded: "Oh why? I don't know, because I'm stupid."[11] Mother admitted that she had every opportunity to work on her ISP treatment plan but she made a choice to leave the drug treatment facility.[12] In response to a question posed by her lawyer, Mother testified that she would like to continue participating in the ISP plan and would have done so if she had not been arrested and placed in jail.

¶13 After leaving Oklahoma, Mother and her husband went to Louisiana, Connecticut, Texas, and Georgia where they were finally arrested. She was arrested for bringing stolen property, a car, and a tag into Georgia. Mother testified that she and her husband tendered a bad check to purchase a car in Oklahoma. When asked why the trial court should not terminate her parental rights her only response was: "because they're my kids and I'm gonna fight for them. No matter what happens in this courtroom today, I'm still going to fight for them. So, you haven't seen the last of me, is all I have to say."[13]

¶14 At the conclusion of the hearing, the trial judge announced "there's more than sufficient evidence to sustain the petition to terminate parental rights and "finds it's in the best interest of the minor children that the application for termination of parental rights be sustained and that the legal relationship of parent and child between the respondent mother and the minor children be terminated forthwith."[14] The following day, the trial court completed a statutory pre-printed form and also filed a more specific detailed Order which included some of the following findings:

1. The minor children were removed in July 2020.

2. The minor children were adjudicated as deprived children on December 9, 2020.

3. Mother was present at the deprived adjudication hearing and the disposition hearing.

4. A treatment plan was approved by the trial court on January 12, 2021.

5. In June 2021, Mother ceased any contact with DHS and her children.

6. Mother was residing in Murray County prior to June 2021 with her husband.

7. Mother left Oklahoma in June 2021 with her husband to flee from charges he had pending in Bryan County, Oklahoma.

8. From June 2021 through August 2021 Mother resided in four different states with her husband.

9. On August 13, 2021, Mother was arrested and incarcerated in Henry County, Georgia on multiple felony charges; charged with bringing stolen property into Georgia.

10. The State filed an Application for Termination of Parental Rights on October 6, 2021.

11. Mother was visiting with E.J.T. and C.T.T. and making minimal progress prior to June 2021.

12. Mother was incarcerated as of the date of the hearing, and she did not know when she would be released.

13. Since June 2021, Mother failed to maintain contact with DHS, failed to obtain a substance abuse assessment; left a sober living program shortly after starting; Mother failed to participate in individual counseling; and Mother remained unemployed.

14. As of the date of the hearing, September 1, 2022, Mother had been incarcerated for 13-14 months, and remained incarcerated as of the date of the hearing; she was facing multiple felony charges.

15. Mother did not have suitable housing; Mother failed to provide any child support for the minor children since this matter was filed and is currently in arrears in the amount of $4,269.66.

16. Mother has failed to maintain contact with the children since June 2021.

17. Respondent had outstanding warrants from Murray County, Oklahoma in Case Numbers CF-21-157 and CF-19-43.

18. E.J.T. and C.T.T. have been in foster care since July 17, 2020, or approximately 25 months.

19. The Court finds it is in the best interests of the minor children that the parental rights of Mother, Brianna Tatum's be terminated; State's Application for Termination of Parental Rights is sustained.

¶15 Although Mother challenged the termination order on multiple grounds, a termination order may be affirmed where only one statutory ground is met. 10A O.S. § 1-4-904 (B); see e.g., Matter of J.J.P.., 2018 OK CIV APP 5, ¶ 15, 408 P.3d 218, 223)"[15] The Court of Civil Appeals affirmed the termination order based on the statutory ground for termination 10A O.S. § 1-4-904 (B) (17), was met. Mother received notice of this ground for termination of her parental rights; she advanced no argument or evidence to dispute the application of this section.[16]

¶16 In addition, on appeal, Mother argued that the record did not show she competently, knowingly, and intelligently waived her right to a jury trial. The Court of Civil Appeals held: (1) Mother consented to a nonjury trial by affirmatively waiving the right in open court and by her conduct of appearing and proceeding with a non-jury trial, and the trial court did not err by proceeding with a non-jury trial; and (2) that a termination order can be affirmed where only one statutory ground for termination is met, affirming that the grounds for termination were met under 10A O.S.2015 Supp., § 1-4-904 (B) (17).[17] Following the issuance of the Court of Civil Appeals' opinion affirming the trial court, Mother filed her Petition for Certiorari. We granted Certiorari on October 30, 2023.

STANDARD OF REVIEW

¶17 The trial court's decision to terminate parental rights should be affirmed on appeal if there is clear and convincing evidence in support. In re S.B.C., 2002 OK 83, ¶ 5, 64 P.3d 1080, 1082. We review the issue of waiver of the right to jury trial for abuse of discretion. Matter of J.L.O., IV, 2018 OK 77, ¶ 22, 428 P.3d 881, 889.

ANALYSIS

¶18 Generally, our certiorari review is limited to those issues raised in the petition with supporting legal authority and argument.[18] Issues raised on certiorari without legal authority or argument need not be addressed by this Court.[19] Mother raised only one issue on certiorari with authority and argument: whether the record supports a finding that Mother gave a competent, knowing and intelligent waiver of her right to jury trial. Mother did not raise any procedural due process issues other than referring to the dissent in the Court of Civil Appeals opinion before us, which cites no specific Oklahoma statutory violations; Mother cited no authority or argument in support.[20] Our review on certiorari is limited to the only issue properly preserved, that the record does not support a finding that Mother waived jury trial.

¶19 Mother charges that the Minute Order fails to affirmatively reflect her "voluntary" waiver of jury trial. Mother does not argue that she did not voluntarily waive this right, only that the record is deficient. A parent facing termination of the severance of the parent-child relationship has a constitutional right to a trial by jury.[21] This right to jury trial in a parental termination case can be surrendered by voluntary consent or waiver.[22] This waiver must be "competently, knowingly, and intelligently given."[23] Mother argues on Certiorari that the Court Minute cannot meet this standard, because it did not include "clear showing through an examination by the trial court" and the Court Minute did not include the word "voluntary" with respect to her waiver. We note that the Court Minute documents that Mother requested a non-jury trial in the presence of her lawyer, a fact that Mother never disputes. We examine this matter under an abuse of discretion standard to discern if the record supports the trial court's finding that Mother competently, knowingly, and intelligently waived her right to jury trial.

¶20 We begin our analysis with Mother's sole argument that a "minute order" does not satisfy the waiver of the jury statute which allows waiver by "oral consent, in open court, entered on the journal."[24] In support, Mother relies on an argument that this Court has never defined "on the journal" but urges that this Court previously adopted the position that a journal entry "in which the trial court recites that theretofore a jury had been waived by statement made in open court, is not sufficient to constitute a waiver." Okmulgee Producing & Ref. Co. v. Wolf, 1923 OK 57, ¶ 8, 212 P. 415, 416. Mother's argument is misleading and distorts our guidance in Wolf. Mother relied on a small phrase, taken out of context, from a much longer sentence. Our actual pronouncement was:

Had counsel for the defendant in open court by oral consent waived a jury prior to such date, a journal entry thereof should have been entered, and, no such journal entry having been made, a journal entry made at the time the jury was demanded, in which the trial court recites that theretofore a jury had been waived by statement made in open court, is not sufficient to constitute a waiver.

Id. (emphasis added). After learning the controversy was set on the equity, non-jury docket, the Wolf defendant filed a motion seeking relief notifying the court it had not waived jury trial and demanding the matter be set before a jury. Following arguments of counsel, the trial court issued an order denying defendant's demand for jury trial finding that defendant waived this right in a previous court appearance. Defendant disputed waiving this right. In its order, the court relied on (1) its "recollection of a statement made in open court by ... the counsel for defendant" in some prior court appearance; and (2) a telegram signed by defendant's counsel, the contents of which were not discussed nor was this 'telegram' included in the appellate record. Id. at ¶ 3. When the matter proceeded to trial, the defendant again demanded a jury trial and asserted that it had never waived jury trial. The trial court again denied defendant's demand for jury trial. On appeal, the plaintiff urged that the trial court's order from the prior hearing which recited that defendant had previously waived jury trial in open court, satisfied the waiver of jury statute then in effect: "By oral consent, in open court, entered on the journal."[25] We made clear in Wolf that the entry "on the journal" must be to memorialize the contemporaneous waiver, not reciting that a party had waived jury trial in a prior court proceeding. A journal entry prepared at the time an actual demand for jury trial is made reciting a prior waiver, where no entry on the journal was ever recorded for such prior waiver, is not sufficient to constitute a waiver.[26] This is not a waiver which would have been given in open court "on the journal." The journal entry examined in Wolf arose from a hearing and trial wherein the defendant was demanding jury trial, not waiving the right.

¶21 Unlike Wolf, in the matter before us, Mother has never made a demand for jury trial, and she acknowledged in open court in the presence of her lawyer that not only did she waive jury trial, but she also requested a non-jury trial. The May 5, 2022, Court Minute reflects the contemporaneous hearing where Mother appeared by tele-conference and her counsel appeared in person. This order established: (1) Mother was present via tele-conference; (2) Mother's lawyer appeared in person before the trial court; (3) the trial court advised Mother of her rights to an attorney, to a jury or non-jury trial and her rights to be present to examine witnesses; (4) Mother gave her verbal consent to waive jury trial, consented to a non-jury trial in open court, "Respondent Mother waives jury trial and requests this matter be set for non-jury trial." After this Court Minute was provided to the parties we note that:

1. Mother's lawyer never argued that this Court Minute was incorrect or erroneous.

2. Mother never asserted that she did not waive jury trial; she never requested a jury trial.

3. Mother was represented by her lawyer who was personally present at this initial appearance; her lawyer never made a demand or request for jury trial at the initial appearance, at trial, in her Petition in Error, or on Certiorari.

4. Mother's lawyer did not object during the initial appearance hearing to his client's waiver of jury trial.

5. Mother's lawyer never objected at the trial on termination of parental rights, to proceeding with non-jury trial.

6. Mother has not asserted that she did not waive jury trial only that the Court Minute was inadequate to establish such waiver.

The trial court is in the "best position to observe an individual who waives a substantial and significant right."[27] In this instance, the trial court personally spoke to Mother, explained her rights to a jury trial, in the presence of her legal counsel whom the trial court also observed. The trial court determined that Mother waived jury trial and so reflected on the Court Minute.

¶22 Moreover, litigants represented by counsel who complete pre-trial discovery, appear at trial never objecting to non-jury trial or demanding a jury trial, and only after losing demanded a jury trial are often referred to as "laying behind a log."[28] Such practices are generally met with disfavor in the courts. It is clear from the record that Mother proceeded with the non-jury trial without any demand, oral or written, for jury trial, Mother never objected to the Court Minute reflecting her waiver. Mother's conduct, proceeding with non-jury trial without any demand oral or written, for jury trial, constitutes a waiver of jury trial.[29] It has been recognized for more than a century that a litigant's conduct can create a waiver as we said in Smith v. Smith, 80 Okla. 136, 184 P. 82 (1919):

[W]here the parties to an action make no request for a jury at any stage of the trial or prior to the commencement thereof, and submit their testimony to the court without a jury, no question of a jury trial having been raised upon the trial of the cause, it is too late for the first time to object in this court that such consent had not been made, and where no request for a jury appears of record, the jury will be considered waived.

Id. 184 P. at 82, (syllabus by the Court), (emphasis added). We also noted in Smith that where the parties appear without demanding jury trial, the parties appear for trial, "and submit their testimony to the court without a jury, and the record in the trial court is silent upon the question of jury trial, this is tantamount to an express waiver of a trial by jury, and an objection thereto and demand for a jury thereafter will not be considered by this court." Id. 184 P. at 85.

¶23 The only issue before us on Certiorari is whether the record demonstrates that Mother's constitutional right to a jury trial in a parental termination case was competently, knowingly, and intelligently given.[30] The trial court was in the best position to observe this waiver, in open court in the presence of her lawyer. No objection has ever been raised to the Minute Order reflecting her waiver, and at no time has a demand for jury been made. Furthermore, Mother proceeded with non-jury trial, never demanding jury trial, or raising any objection to the non-jury trial, until after the adverse ruling. In addition, this conduct alone would constitute a waiver of jury trial. We hold the trial court did not abuse its discretion in proceeding with a non-jury trial in this matter.

COURT OF CIVIL APPEALS' OPINION VACATED; 
TRIAL COURT'S ORDER TERMINATING 
PARENTAL RIGHTS IS AFFRIMED

ALL JUSTICE CONCUR

FOOTNOTES

[1] ROA, Doc. #4, Ind. Serv Plan, Jan. 11, 2021.

[2] For purposes of terminating parental rights, on the date of filing a termination petition, there must be a finding that a child was younger than four years of age at the time of placement in foster care and they were placed for at least six of the preceding twelve months. 10A 2015 Supp., § 1-4-904 (B) (17) Termination of Parental Rights --
(B) The court may terminate the rights of a parent to a child based upon the following grounds:

****

(17) A finding that a child younger than four (4) years of age at the time of placement has been placed in foster care by the Department of Human Services for at least six (6) of the twelve (12) preceding the filing of the petition or motion for termination of parental rights and the child cannot be safely returned to the home of the parent.
(a) For purposes of this paragraph, a child shall be considered to have entered foster care on the earlier of:
(1) the adjudication date, or
(2) the date that is sixty (60) days after the date on which the child is removed from the home.
b. For purposes of this paragraph, the court may consider:
(1) the circumstances of the failure of the parent to develop and maintain a parental bond with the child in a meaningful, supportive, manner, and
(2) whether allowing the parent to have custody would likely cause the child actual serious psychological harm or harm in the near future as a result of the removal of the child from the substitute caregiver due to the existence of a strong, positive bond between the child and caregiver. (emphasis added).

[3] ROA, Doc. # 4, ISP Dispositional Report, 1-11-21

[4] ROA, Doc. No. 5, Disposition Ord., 1-12-21.

[5] ROA, Doc. 5, Disposition Order, p. 39, (emphasis added).

[6] ROA, Doc. # 12, 10-6-21.

[7] ROA, Doc. # 14, Ind. Serv. Plan, 12-28-21.

[8] ROA, Doc. # 20, Court Minute, 5-17-21; While we note that the date of the initial appearance was May 5, 2022, and the Court Minute was not filed until May 17, 2022, we find this inconsequential to the issue of whether Mother waived jury trial on the date of hearing. We note that no objection was ever raised either through a pleading or during a hearing or even on appeal that this Court Minute was in any way inaccurate or failed to accurately reflect what transpired at the court appearance.

[9] ROA, Doc. No. 25, Tr. of Term. Of Parental Rights, p. 15.

[10] Id. at p. 55.

[11] Id. at p. 57.

[12] Id. at p. 58.

[13] Id. at p. 48.

[14] Id. at p. 64.

[15] Court of Civil Appeals Opinion, 120,735, unpublished.

[16] Although Mother did not preserve review of this termination grounds on certiorari, we note that there is clear and convincing evidence that each prong of Section (B) (17) was met and Mother had no disputing evidence, and she never argued she did not get Notice of this grounds for termination. The record reflects this statutory ground for termination was specifically listed in the State's application.

[17] 10A O.S. Supp.2015, § 1-904 (B); See also, Matter of J.J.P., 2018 OK CIV APP 5, 408 P.3d 218.

[18] Beyrer v. The Mule, LLC, 2021 OK 45, ¶ 9, 496 P.3d 983, 987.

[19] State ex rel. Dept. of Pub. Safety v. 1985 GMC Pickup, Serial No. 1GTBS14EOF2525894, OK Tag No. ZPE852, 1995 OK 75, ¶ 19, 898 P.2d 1280, 1284--85; See also, Hough v. Leonard, 1993 OK 112, 867 P.2d 438.

[20] We note that Mother admitted during trial that (1) she had notice of and understood all of the components of the ISP, and what was expected of her for reunification, and (2) that she voluntarily left Oklahoma and abandoned her drug rehabilitation program, mental health counseling, and visitation with her children. We also note that the State outlined with specificity in its application for termination, sufficient to reasonably inform Mother that her legally protected interest, ie. parental right, may be adversely affected. In re T.T.S., 2015 OK 36, ¶ 19, 373 P.3d 1022, 1029. Although we do not reach this issue today, we do note that at a minimum, the record reflects that the deprived adjudication included findings of substance abuse, Mother's subsequent acknowledgement, by signing the ISP and her testimony at trial, of the following: mandatory requirement for substance abuse evaluation, the completion of a drug rehabilitation program, drug screening, and mental health counseling. The final order included these precise conditions that Mother failed to correct, and of which Mother admitted at trial her knowledge and her failure to correct.

[21] A.E. v. State, 1987 OK 76, ¶ 21, 743 P.2d 1041, 1047-1048.

[22] Matter of J.L.O., IV, 2018 OK 77, ¶ 22, 428 P.3d 881, 889.

[23] Id.

[24] 12 O.S. 2021, §591. Waiver of jury.

The trial by jury may be waived by the parties, in actions arising on contract, and with the assent of the court in other actions, in the following manner: By the consent of the party appearing, when the other party fails to appear at the trial by himself or attorney. By written consent, in person or by attorney, filed with the clerk. By oral consent, in open court, entered on the journal.

[25] Id.

[26] Wolf, Supra. at ¶ 8, 212 P. at 416.

[27] Matter of J.L.O. Supra, note 22, ¶ 23, 428 P.3d at 889.

[28] Matter of Termination of Parental Rights, 1993 OK 10, ¶ 8, 847 P.2d 768, 770.

[29] Id.

[30] Supra., Matter of J.L.O., Supra., note 22.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2018 OK CIV APP 5, 408 P.3d 218, 
IN THE MATTER OF J.J.P.
Discussed at Length

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1987 OK 76, 743 P.2d 1041, 58 OBJ 2310, 
A.E. v. State
Discussed

 
1993 OK 10, 847 P.2d 768, 64 OBJ 576, 
Termination of Parental Rights, Matter of
Discussed

 
1993 OK 112, 867 P.2d 438, 64 OBJ 2836, 
Hough v. Leonard
Discussed

 
1919 OK 57, 184 P. 82, 80 Okla. 136, 
SMITH et al. v. SMITH et al.
Discussed

 
1923 OK 57, 212 P. 415, 88 Okla. 188, 
OKMULGEE PRODUCING & REF. CO. v. WOLF.
Discussed

 
1995 OK 75, 898 P.2d 1280, 66 OBJ 2327, 
State ex rel. Dept. of Public Safety v. 1985 GMC Pickup
Discussed

 
2002 OK 83, 64 P.3d 1080, 
IN THE MATTER OF S.B.C.
Discussed

 
2015 OK 36, 373 P.3d 1022, 
IN THE MATTER OF T.T.S.
Discussed

 
2018 OK 77, 428 P.3d 881, 
IN THE MATTER OF J.L.O.
Discussed at Length

 
2021 OK 45, 496 P.3d 983, 
BEYRER v. THE MULE
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 591, 
Waiver of Trial by Jury
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA